ALLSTATE INSURANCE COMPANY, Appellant, v. CHARNESKI and others, Respondents.

*March 8—April 3, 1962.*

326

For the appellant there was a brief by *Peickert, Anderson & Fisher,* and *John E. Shannon, Jr.,* attorneys, and *Gerald M. O'Brien* of counsel, all of Stevens Point, and oral argument by *H. D. Anderson.*

For the respondent Heritage Mutual Insurance Company there was a brief by *Smith, Puchner, Tinkham & Smith,* attorneys, and *C. Duane Patterson* of counsel, all of Wausau, and oral argument by *Mr. Patterson* and *Mr. Richard P. Tinkham.*

HALLOWS, J. Apparently deterred by the holding in *New Amsterdam Casualty Co. v. Simpson* (1941), 238 Wis. 550, 300 N. W. 367, that an automobile liability insurer cannot have declaratory judgment to determine insurance coverage involving an automobile accident in advance of the determination of the alleged insured's liability on the negligence issue, the appellant, being a foreign corporation, sought such relief under the Federal Declaratory Judgments Act (28 USCA, p. 412, sec. 2201) on the jurisdictional ground of diversity of citizenship. Such choice of forums was not without merit and encouragement since precedents existed for such relief in the federal court which involved the plaintiff. *Allstate Ins. Co. v. Moldenhauer* (7th Cir. 1952), 193 Fed. (2d) 663; *Chase Nat. Bank v. Citizens Gas Co.* (7th Cir. 1940), 113 Fed. (2d) 217. While the federal trial court was sympathetic to the appellant's position, the court of appeals was not, and thus the first question upon this appeal is raised, namely, is the federal suit *res adjudicata* of this action?

The appellant claims the only matter decided was a point of federal procedure under the federal statutes and the decision represents only an application of the "abstention doctrine." Strictly speaking, the court of appeals for the Seventh circuit held the federal district court should not have entertained the appellant's motion for declaratory relief under the Federal Declaratory Judgments Act [1] because to do so would be contrary to the public policy of Wisconsin

---

[1] *Allstate Ins. Co. v. Charneski* (7th Cir. 1960), 286 Fed. (2d) 238.

as set forth in the *Simpson Case,* which denied the right of an insurance company to bring a declaratory-judgment action under the Wisconsin Uniform Declaratory Judgments Act, sec. 269.56, Stats., 31 W. S. A., p. 688, involving an automobile liability policy because such action would be in contravention of the legislative policy in enacting the direct-action statute (sec. 260.11, Stats., 30 W. S. A., p. 39; sec. 204.30 (4), Stats., 25 W. S. A., p. 26, 1961 pocket part). Under the authority of the doctrine of *Erie R. Co. v. Tompkins* (1938), 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188, and finding the simple substantive-procedural classification as applied to *Simpson* would not be determinable of the question because while *Simpson* admittedly dealt with a procedural matter in one context, it was otherwise impregnated with substantive law, the court turned to the test of (p. 243), "the consideration and accommodation of the basic state and federal policy goals involved." In applying this standard, the court reasoned the Wisconsin policy of providing direct action against insurance companies and exclusively preferring such suits over declaratory relief in automobile negligence cases was substantive policy which outweighed any slight federal interest to be served by a diversity suit for discretionary declaratory relief which would, if allowed, seriously weaken the state position, and "create discriminations against citizens of the state in favor of those authorized to invoke the diversity jurisdiction of the federal courts." It was that element of discrimination that *Erie R. Co. v. Tompkins, supra,* was designed to eliminate. *Woods v. Interstate Realty Co.* (1949), 337 U. S. 535, 69 Sup. Ct. 1235, 93 L. Ed. 1524; *Guaranty Trust Co. v. York* (1945), 326 U. S. 99, 65 Sup. Ct. 1464, 89 L. Ed. 2079; *Angel v. Bullington* (1947), 330 U. S. 183, 67 Sup. Ct. 657, 91 L. Ed. 832.

Thus the federal court refrained from exercising its jurisdiction under the Federal Declaratory Judgments Act and

in no way decided the merits of the declaratory-judgment suit. Such a decision applied to this action in the state court is not within the rule of *res adjudicata* although it would be in another federal court in Wisconsin. 30A Am. Jur., Judgments, p. 388 *et seq.,* sec. 347, and p. 394, sec. 353; Anno. Res Judicata—Dismissal—Jurisdiction, 49 A. L. R. (2d) 1036. For a somewhat-analogous situation involving the abstention doctrine, see Federal Jurisdiction: Problems Involved in the Discretionary Use of the Abstention Doctrine, 1961 Wisconsin Law Review, 450.

However, this does not mean the appellant can successively maintain this action. While we do not regard the federal court's decision as the law of the case, to allow the appellant, after an attempt at forum-shopping, to bring this action as a last resort would disrupt the orderly process of justice and increase litigation. The appellant, as a foreign corporation, had a choice of shopping in the state or the federal forum and chose the federal forum for its purpose. Perhaps there is no harm in window-shopping, but here the appellant bought its forum. On the ground of policy, the appellant having been unsuccessful in its attempt to secure relief which *Simpson* does not give it in the state court, the appellant ought not now be allowed to maintain this suit for the same relief. As was said concerning the application of estoppel by record in *Kuchenreuther v. Chicago, M., St. P. & P. R. Co.* (1937), 225 Wis. 613, 616, 275 N. W. 457, although not strictly applicable to the instant case, "To permit this would be permitting a misuse and abuse of the judicial process."

The appellant strenuously argues its case presents a set of facts distinctly different in their nature from those of the *Simpson Case* and seeks not to overrule *Simpson* but to correct Wisconsin's procedure when the unusual circumstances of the uninsured-motorist coverage are involved and when an issue of fraud exists which creates a conflict of interest

for the insurer. We are not unaware of the difficulties of an insurer's defending the insured on a negligence issue and asserting fraud as a policy defense against the insured at the same time before the same jury even by separate counsel; but we are not convinced the solution for this problem is a separate suit for declaratory relief in advance of the trial of the negligence issue. To allow such a suit would delay the trial of an injured party until the coverage question had been litigated and finally determined, possibly, on appeal.

The immediate remedy for an insurer having a policy defense lies in the more-extensive use of a separate trial under sec. 260.11, Stats. This section provides when an insurer shall be made a party defendant and it appears either before or during trial that there is or may be a cross issue between the defendant insurer and the insured or between any other party and the insurer involving the question of whether the insurer would be liable if a judgment should be rendered against the insured, the court may cause the person who may be liable upon such cross issue to be made a party defendant and all issues involved determined in the trial. The section also expressly provides it shall not be construed as prohibiting the trial court from conducting first a trial on the issue of whether the insured is liable to the plaintiff or other party and directing a separate trial on the policy defense. We recommend that this procedure of a separate trial thus affirmed be more frequently used and allowed by the trial court to avoid conflict-of-interest situations before the same jury and in other situations where it would be unjust to the insurer to try the policy-defense issue in the same trial with the negligence issue.

True, this procedure requires an insurer to furnish a defense to one who subsequently may be found not to have been entitled to such defense on the basis of noncoverage; but insurance policies are written on a risk basis in the light of the *Simpson Case* and sec. 260.11, Stats., and the control

of the defense of the insured is reserved by the insurer for its own benefit. In the few cases where the insurer is not made a party, it, of course, has a choice and can refuse to defend at its peril, but it must be recognized an insurer of an automobile liability policy must in some cases give what has become to be known as "a free defense." At least that result occurs because of the public policy upon which the direct-action statute rests when factual issues of a policy defense exist. Where only a question of law arises on the pleadings, either by summary judgment, declaratory relief, or otherwise, in an action within sec. 260.11, such issue may be determined in such action prior to the determination of the factual issues of negligence of the insured. Where such statute is not applicable, declaratory relief has been used. See *Hardware Mut. Casualty Co. v. Hartford Accident & Indemnity Co.* (1959), 6 Wis. (2d) 457, 95 N. W. (2d) 215.

The presence of "uninsured-motorist coverage," a new innovation in automobile liability policies, does not furnish a basis for relief to the appellant, the merits of whose policy defense is unaffected. The argument is based on the theory it is unjust to require the injured party to sue at the peril of losing this coverage or to commence a meaningless suit. On the facts presented, those defendants, for whom such additional protection was afforded, had permission of the Heritage Mutual Insurance Company to sue, but apparently the appellant won the race to the courthouse. Nor would the injured party who commenced a suit with permission against an insured under a cloud of a policy defense be required to terminate his suit prior to judgment or consider the judgment of liability of no effect under the uninsured-motorist clause. Permission to sue would waive the requirement of agreement and arbitration under such coverage clause. The purpose of such provision for agreement or arbitration is to protect the insurer offering uninsured-motorist coverage

from a determination made in a suit which is either uncontested or inadequately contested by the other motorist. The determination that the other driver is uninsured is of basic importance to the liability of the insurance company providing uninsured-motorist coverage. Rather than increasing lawsuits, it seems to us the present rule discourages them. Nor does the Wisconsin Safety Responsibility Law pose any insuperable difficulties which demand the relief requested.

*By the Court.*—Judgment affirmed.