Bradley MOWRY, Plaintiff-Respondent,

v.

## BADGER STATE MUTUAL CASUALTY COMPANY, a Wisconsin corporation, Defendant-Appellant. †

Supreme Court

*No. 84–1635. Argued November 25, 1985.—Decided April 18, 1986.*

(Also reported in 385 N.W.2d 171.)

† Motion for reconsideration denied, with costs, on May 30, 1986.

499

500

For the defendant-appellant there were briefs by *Steven J. Caulum, Thomas A. Lockyear, Jan A. Smokowicz* and *Bell, Metzner & Gierhart, S.C.,* Madison, and oral argument by *Mr. Caulum.*

For the plaintiff-respondent there was a brief and oral argument by *Alan M. Clack,* Santa Rosa, California.

Amicus curiae brief was filed by *James T. Murray, Jr., Randy S. Parlee* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, for the Wisconsin Insurance Alliance.

LOUIS J. CECI, J. This is a review of the circuit court's decision and judgment against Badger State Mutual Casualty Company (Badger State) in the amount of $159,000. In a decision filed on May 23, 1984, the circuit court for Waukesha county, Robert T. McGraw, circuit judge, held that Badger State breached its contract and committed bad faith in refusing to defend its insured and in refusing to settle the third-party claim of victim Bradley Mowry within the liability limits of an insurance policy. We reverse the judgment of the circuit court.

This case comes to us on certification from the court of appeals, district II, pursuant to sec. (Rule) 809.61, Stats.[1] The issue is whether the circuit court erred in holding that Badger State breached its contract with its insured and committed the tort of bad faith in refusing to defend its insured and in refusing to negotiate a settlement within policy limits when Badger State had sought a separate trial on the issue

---

[1] That statute provides:

"The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. The supreme court may refuse to take jurisdiction of an appeal or other proceeding certified to it by the court of appeals."

of coverage, under sec. 803.04(2)(b). [2] We address whether an insurer who receives and loses a separate trial on the issue of coverage and then immediately offers the policy limits under an insurance contract may be held liable for damages adjudged against its insured which exceed the liability limits of the insurance policy. We determine that, under the facts of this case, Badger State should not be held responsible for the excess judgment entered against its insured. The trial court erred in holding that Badger State breached its contractual duty to defend and that it committed bad faith in refusing to settle Mowry's claim within its insured's policy limits.

The historical facts of this case are undisputed. On May 3, 1975, Bradley Mowry, then age 19, was injured in an automobile accident and suffered serious bodily injury, including the amputation of part of one foot. He

---

[2] That statute provides:

"If an insurer is made a party defendant pursuant to this section and it appears at any time before or during the trial that there is or may be a cross issue between the insurer and the insured or any issue between any other person and the insurer involving the question of the insurer's liability if judgment should be rendered against the insured, the court may, upon motion of any defendant in the action, cause the person who may be liable upon such cross issue to be made a party defendant to the action and all the issues involved in the controversy determined in the trial of the action or any 3rd party may be impleaded as provided in s. 803.05. Nothing herein contained shall be construed as prohibiting the trial court from directing and conducting separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief and on the issue of whether the insurance policy in question affords coverage. Any party may move for such separate trials and if the court orders separate trials it shall specify in its order the sequence in which such trials shall be conducted."

was a passenger in an automobile driven by Steven McCarthy. The vehicle left a roadway and collided with a bridge abutment. McCarthy's parents were insured by Badger State and had policy limits of $15,000 for damages to any one person and medical coverage up to $1,000.

Upon being notified of the accident, Badger State began to investigate the circumstances surrounding the accident. The claims manager for Badger State, John Graeber, concluded after reading the police report and interviewing all of the automobile's occupants that the case was one of probable liability on McCarthy's part. He also determined that the case would probably involve damages to Mowry in excess of the $16,000 policy limits.

Badger State's investigations indicated to it, however, that a question of policy coverage existed. The question revolved around the ownership of the vehicle which McCarthy was driving at the time of the accident. The insurer believed that it was unclear whether McCarthy or his parents were the true owners of the automobile involved in the accident. Its investigation disclosed that the car was titled in McCarthy's mother's name, but that McCarthy had paid for the car with his own money, did not need permission to drive the car, and had told several people at the scene of the accident that he owned the vehicle and that it was uninsured. Given these circumstances, Graeber concluded that the issue of ownership was debatable and that a serious question of coverage had arisen.

In March, 1976, ten months after the accident, Mowry filed suit against McCarthy, McCarthy's parents, Badger State, and an insurance agent. In its answer dated March 2, 1977, Badger State denied any cov-

erage under the policy for the automobile driven by McCarthy on the date of the accident, based on its belief that the automobile was not owned by its insureds, McCarthy's parents.

On September 13, 1977, Mowry issued a formal demand of settlement for the full amount of the liability insurance coverage, $15,000. Badger State's attorney, Kurt Frauen, responded that Badger State had denied coverage under the policy, but that he would inform Badger State of the offer. Badger State did not accept the offer.

At a pretrial conference on September 26, 1977, Attorney Frauen requested that Mowry's counsel and other parties present agree to a bifurcated trial in which a determination on coverage would precede any trial on the issue of liability. In relating the events of the pretrial conference to Badger State, Attorney Frauen wrote, "Everyone seemed to feel that if the coverage issue were resolved, the rest of the case would not have to be tried." Mowry's counsel reiterated Mowry's offer of settlement on September 26, 1977, but Badger State again refused to accept it.

A subsequent stipulation and order set April 4, 1979, as the commencement date for the trial on the issue of coverage; the issues of liability and damages were to be held in abeyance until the resolution of the coverage issue. On March 12, 1979, approximately three weeks before the coverage trial, Mowry once more demanded that Badger State pay the limits of McCarthy's liability insurance policy plus $1,000 under the medical payments coverage; he set a March 23, 1979, deadline for its acceptance. Badger State's counsel, in correspondence to Mowry's counsel, stated that he felt the settlement demand was contrary to the

stipulation and order separating the coverage issue from the liability and damages issues: "The court has in fact bifurcated the trial . . . to resolve the coverage dispute before proceeding with the plaintiff's case." Mowry's counsel responded that he believed that stipulating to a bifurcation of issues "should not in any way be construed as barring plaintiff from attempting to negotiate settlement of his entire claim."

Badger State refused Mowry's March 12 settlement offer. On April 4, 1979, the coverage issue was tried before a jury. The jury returned a verdict the next day which found that McCarthy's parents owned the vehicle in question at the time of the accident. Coverage was thereby afforded Steven McCarthy under the policy.

On April 6, 1979, Badger State offered the limits on its liability policy and medical payments coverage. On January 10, 1980, Badger State's counsel informed McCarthy that it would assume McCarthy's defense in the action. Following negotiations between counsel for Mowry and Badger State, the parties entered into a stipulation of judgment in October, 1980, thereby rendering a trial on the liability and damages issues unnecessary. The judgment was in favor of Mowry and against Badger State for $16,000 and against Steven McCarthy for $175,000. The stipulation further called for McCarthy to assign to Mowry any and all causes of action which McCarthy might have against Badger State, in satisfaction of Mowry's judgment against McCarthy. Following that stipulation and entry of judgment, Mowry, suing under McCarthy's assignment of rights, brought the present action against Badger State for bad faith and breach of contract.

The circuit court, in holding that Badger State breached its contract in refusing to defend and that it committed bad faith in refusing to negotiate a settlement, was indignant that an insurer would delay settlement negotiations until the coverage issue has been judicially determined, particularly when liability and excess damages are undisputed. The court felt that Badger State's posture of not negotiating a settlement until the determination of the coverage issue placed all the risk of an excess judgment on the insured. It found that an insurance company who refuses to defend and refuses to negotiate may not protect itself from a claim for damages in excess of policy limits by tendering the policy limits only upon losing the coverage issue of a bifurcated trial. Citing *Luke v. American Family Mut. Ins. Co.*, 476 F.2d 1015 (8th Cir. 1973), Judge McGraw stated that the proper rule should be " 'when an offer of settlement within the policy limits has been made and ignored, a good faith refusal to defend is not a valid defense to a claim in excess of the policy limits. . . .' " *Luke*, 476 F.2d at 1021. The court then awarded Mowry damages in the amount of $159,000, representing the stipulated amount of liquidated damages for which Badger State would be liable in any action brought by Mowry as assignee against Badger State.

Badger State appealed. The court of appeals, in its certification memorandum, framed the issue to be whether an insurance carrier "should be held liable for damages in excess of its policy coverage where its belief that there was no coverage led it to reject" an earlier offer of settlement within the policy limits. The court noted that this particular scenario presents an unaddressed area of insurance law in this state.

The parties assert the same arguments here as they did below. Mowry states that, in refusing to negotiate a settlement and in refusing to defend McCarthy, Badger State breached contractual and fiduciary duties it owed to McCarthy. Badger State argues that it committed no bad faith in pursuing a fairly debatable coverage question within the framework of a bifurcated trial. In effect, it argues that any duty to negotiate a settlement is suspended when a bifurcated trial has been granted on a threshold issue of coverage. If it breached its contractual duty to defend, Badger State believes that damages should be limited to the liability limits of the policy. Because we hold that Badger State did not act in bad faith, nor did it breach its contractual duties owed to McCarthy, we do not reach the matter of calculation of damages.

We note the competing interests on each side of this case. When an insurer is certain of its insured's liability for an accident and where damages to the victim exceed policy limits, the insurer would normally be responsible for indemnifying its insured to the extent of its policy limits. The insurer, however, experiences a conflict of interests whenever an offer of settlement within policy limits is received where a legitimate question of coverage under the policy also exists. *See,* Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136 (1954). *See also, Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 14, 235 N.W. 413 (1931) (on rehearing). The insurer will be reluctant to settle within policy limits if there is a likelihood that coverage does not exist. On the other hand, an insurer's failure to settle a victim's claim within policy limits may subject an insured to a judgment in excess of his

509

policy limits. This case presents a good example of these conflicting interests.

## BAD FAITH CLAIM

An insurer owes a general duty to its insured to settle or compromise a claim made against the insured. *Hilker,* 204 Wis. at 13. This duty does not arise out of an express contractual provision; rather, it is implied from the terms of the contract which give the insurer the absolute control of the defense of the action against the insured. *Id.* at 13–14.

The insurer has the right to exercise its own judgment in determining whether a claim should be settled or contested. But "exercise of this right should be accompanied by considerations of good faith." *Id.* at 14. In order to be made in good faith, a decision not to settle a claim must be based on a thorough evaluation of the underlying circumstances of the claim and on informed interaction with the insured. This gives rise to several obligations on the part of the insurer. First, the insurer must exercise reasonable diligence in ascertaining facts upon which a good-faith decision to settle or not settle must be based. Second, where a likelihood of liability in excess of policy limits exists, the insurer must so inform the insured so that the insured might properly protect himself. *Id.* at 15–16. Third, the insurer must keep the insured timely abreast of any settlement offers received from the victim and of the progress of settlement negotiations. *Baker v. Northwestern Nat. Casualty Co.,* 22 Wis. 2d 77, 83, 125 N.W.2d 370 (1963).

These three obligations arise as a result of the insurer's general duty owed to its insured to settle a claim. The duty to settle, in turn, emanates from the contractual terms giving the insurer the absolute control of the defense of the victim's action against the insured. Because the insured has given up something of value to the insurer—namely, the right to defend and settle a claim—the insurer has been said to be in the position of a fiduciary with respect to an insured's interest in settlement of a claim. *See, Alt v. American Family Mut. Ins. Co.,* 71 Wis. 2d 340, 348, 237 N.W.2d 706 (1976). Whenever a question of policy coverage exists, however, an insurer's duty to settle under the contract is in doubt. Its duty to settle is dependent upon whether the policy extends coverage for the circumstances underlying the harm sustained. Mowry argues that the insurer's mistaken decision about the nonexistence of coverage should render Badger State liable for the excess judgment entered against the insured. He does not assert that Badger State breached any of the three traditional obligations arising out of the general duty to settle. Rather, he asserts that Badger State acted in bad faith in deciding to disclaim coverage where it was convinced that no real issue as to liability or damages existed. Moreover, he argues that Badger State's liability for damages caused by its refusal to settle an excess liability claim is not excused by a good-faith failure to defend.

To support his argument, Mowry cites cases from other jurisdictions which ostensibly are on point. In *Luke,* 476 F.2d 1015, the court held that an insurer who denied coverage to its insured because the insurer doubted that coverage existed under the contract was

liable to the insured's assignees for the entire excess judgment for the breach of its duty to settle. Like the instant case, the insurer in *Luke* believed that an issue as to automobile ownership had arisen. The insurer denied coverage on that basis. It also received several offers of settlement within policy limits. However, the offers were ignored. In addition, the insurance company refused to consider a declaratory action concerning the coverage issue. Despite this conduct, the lower court held that the insurer exercised good faith in refusing to provide coverage. *Id.* at 1018–20.

The Eighth Circuit Court of Appeals found that the insurer refused to settle *and* refused to defend and, therefore, had breached its contract with the insured. Good faith, the court found, is irrelevant to a breach of contract action. "When an insurer refuses to defend and, additionally, refuses to accept a reasonable settlement within the policy limits, the company's liability for damages may be measured as well by its rejection of the offer to settle and may thus exceed the policy limits." *Id.* at 1020.

We do not find *Luke* to be persuasive in the present situation. First, in this case there was no breach of contract for failure to defend (for reasons which will be discussed below) as there was in *Luke.* Good faith, although of no importance in breach of contract actions, is a consideration in actions claiming a breach of the duty to settle, which arises out of fiduciary principles. *Alt,* 71 Wis. 2d at 348. *Johnson v. American Family Mut. Ins. Co.,* 93 Wis. 2d 633, 646, 287 N.W.2d 729 (1980). Second, the insurer in *Luke* refused the plaintiff's offer to hold the suits in abeyance in order to give the insurer an opportunity to file a declaratory judgment suit. Here, Badger State sought out an agreement

512

based on a statutory provision whereby the coverage issue could be judicially determined prior to any liability and damages issues. It did not simply ignore the victim's claim, as the insurer in *Luke* apparently did.

Mowry also cites *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 328 P.2d 198 (1958). *Comunale* involves another "refusal to defend" case. The insurer, believing that the insurance contract did not provide coverage for the victim's injury, refused to defend its insured. The trial proceeded to judgment against the insured, which included an award to the victim in excess of the insured's policy limits. Under assignment, the victim sued the insurer. The Supreme Court of California stated,

> "When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing." 50 Cal. 2d at 659, 328 P.2d at 201.

That court then held the insurer liable for the excess judgment entered against the insured, representing the insured's damages for breach of the duty to settle.

The *Comunale* rule, in effect, renders an insurer strictly liable for any decision not to settle within policy limits, whether or not made in good faith, when a subsequent judgment against the insured exceeds policy limits:

> " 'An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be

513

wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. 50 Cal. 2d at 660, 328 P.2d at 202.' " *Johansen v. California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal. 3d 9, 15, 538 P.2d 744, 123 Cal. Rptr. 288 (1975).

In *Johansen,* the California court further explained the upshot of its strict liability approach:

"[T]he only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one." 15 Cal. 3d at 16, 538 P.2d at 748–49.

Although we acknowledge the apparent goal of the California approach—to protect the insured from liability for an excess judgment by placing the risk of an erroneous decision not to settle on an insurer—we decline to accept that strict approach for this jurisdiction. Such a policy is unduly oppressive on insurance companies and would force them to settle claims where coverage may be dubious. The California approach is particularly unseemly in a jurisdiction such as our own, where an insurer may seek judicial determination of coverage issues prior to litigating liability and damages issues. *See,* sec. 803.04(2)(b), Stats. The California approach is unrealistic if only to the extent that an insurer's belief that an insurance policy does or does not

provide coverage must necessarily "affect a decision as to whether the settlement offer in question is a reasonable one." *Johansen,* 15 Cal. 3d at 16, 538 P.2d at 749.

We have held that an insurer has a right to exercise its own judgment in deciding whether to settle or contest a claim, within parameters of good faith considerations. *Hilker,* 204 Wis. at 14. An insurer need not accept every offer of settlement within policy limits under sanction of liability for an excess judgment against its insured. *See, Johnson,* 93 Wis. 2d at 645–46. The *Hilker* and *Johnson* cases did not involve an issue of coverage as a basis for denial of settlement offers. Whether an insurer who rejects an offer to settle within policy limits because of a coverage question shall be liable for some measure of damages upon a determination of coverage depends upon whether the insurer acted in bad faith in determining that a coverage question existed. The tort of bad faith is "the knowing failure to exercise an honest and informed judgment." *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 692, 271 N.W.2d 368 (1978). To hold that Badger State breached its duty to settle requires a finding that it committed the tort of bad faith.[3] Badger State asks this court to adopt the standard set forth in *Anderson.*

Bad faith in deciding to litigate rather than settle a claim involves more than a mere finding of negligence on the part of the insurer. *Warren v. American*

---

[3] We reiterate that Mowry does not assert that Badger State failed to meet any of the obligations arising out of the duty to settle. *See, Baker,* 22 Wis. 2d at 82–83. An insurer must exercise reasonable diligence in the undertaking of these obligations. *Hilker,* 204 Wis. at 15.

*Family Mut. Ins. Co.,* 122 Wis. 2d 381, 385, 361 N.W.2d 724 (Ct. App. 1984). Where there is no bad faith, an insured (or an insured's assignee) may not "surcharge an overage against his insurance company merely because of" any possible negligence on the insurer's part in deciding to litigate rather than to settle. *Baker v. Northwestern Nat. Casualty Co.,* 26 Wis. 2d 306, 314–15, 132 N.W.2d 493 (1965).

In *Anderson,* a first-party claim case, this court held that an insurance company may challenge claims which are fairly debatable. 85 Wis. 2d at 693. We said,

> "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691.

An insurer will have committed the tort of bad faith only when it has denied a claim without a reasonable basis for doing so, that is, when the claim is not fairly debatable.

This court has held that in third-party claim situations, it is not bad faith for an insurer to refuse to settle a victim's claim "under the bona fide belief that the insurer might defeat the action. . . ." *Johnson,* 93 Wis. 2d at 646. *See also, Maroney v. Allstate Ins. Co.,* 12 Wis. 2d 197, 200–01, 107 N.W.2d 261 (1961). Although the "bona fide belief" language applies to a third party's action against the insured, we similarly hold that it is not bad faith for an insurer to refuse to settle an injured's claim within the policy limits when the question of policy coverage is fairly debatable and when the grounds for the refusal, if determined in the insurer's

favor, would wholly defeat the indemnity responsibility of the insurer to its insured.

■

We hold that the circuit court erred in finding in this case that Badger State committed bad faith by refusing to settle and negotiate a settlement within policy limits. A finding of bad faith must not be measured solely against a backdrop that coverage was ultimately found to exist under the policy. Bad faith should be found in this case only if there was no fairly debatable coverage question. However, the circuit court, sitting without a jury, did not use this standard to reach its bad faith conclusion. The court concluded that Badger State's posture of waiting to defend the action and to negotiate a settlement until the coverage issue was determined itself constituted bad faith. Because the circuit court did not rely on appropriate and applicable law in making its bad faith determination, its holding is an abuse of discretion and, as such, is erroneous. *See, Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

The upshot of the trial court's holding would be to require the insurer to accept an offer within policy limits even where a fairly debatable coverage question exists. We have, however, rejected the California approach, which would make an insurer strictly liable for an offer of settlement within policy limits.

Although this court might otherwise remand a matter to the circuit court for further consideration where the appropriate law has not been applied, we choose to decide the bad faith issue as a matter of law.

■

Bad faith is a determination to be made by the trier of fact. *Baker,* 26 Wis. 2d at 315. Like negligence,

517

whether certain conduct constitutes bad faith raises a mixed question of fact and law. *See, Millonig v. Bakken,* 112 Wis. 2d 445, 450, 334 N.W.2d 80 (1983). First a question is raised with respect to what the party allegedly in bad faith did or failed to do. The second inquiry is whether a reasonable insurer would have denied policy coverage under the facts and circumstances of the particular case. *See, Anderson,* 85 Wis. 2d at 692. In instances in which such a matter is tried to a jury, and when the facts are undisputed and the evidence permits only one reasonable inference or conclusion, then the issue of bad faith is to be decided by the court as a matter of law, rather than by the fact finder as a question of fact. *See, Millonig,* 112 Wis. 2d at 450–51. In this case the issue of bad faith was tried to the court, not to a jury. With respect to the court's findings in such an instance,

> "[w]hen the principal facts in a case are undisputed and the controversy centers on what has been called ultimate conclusions of fact, or conclusions of law, this court has indicated it will not be bound by the findings of the trial court." *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Milwaukee,* 47 Wis. 2d 88, 96, 176 N.W.2d 580 (1970).

Here, because the principal facts underlying the bad faith claim are undisputed and because there is only one reasonable inference, we may review the matter of bad faith as a question of law without deference to the trial court or court of appeals.

Badger State's grounds for refusing the settlement offers within policy limits were that it did not believe that the car involved in the accident was owned by its insureds, McCarthy's parents. Badger State, therefore, concluded that the policy did not extend coverage to

McCarthy through his parents. Mowry disputes Badger State's conclusion that the coverage question was fairly debatable. He notes that whether a matter is fairly debatable "implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded." *Anderson,* 85 Wis. 2d at 691. He asserts in his brief that Badger State recklessly ignored the fact that the automobile in question was registered in the name of Mildred McCarthy (who is one of the policy's two named insureds and Steven McCarthy's mother), that McCarthy's father contributed to the purchase price of the car, and that Mildred had driven the car as well as Steven, among other relevant facts.

Badger State responds that McCarthy did not need parental permission to operate the car, that McCarthy said at the accident site that the car was uninsured, and that McCarthy's father told McCarthy to obtain insurance on the car. In addition, Mowry's counsel conceded during the underlying bad faith trial before Judge McGraw that evidence existed which presented a jury issue on coverage. Mowry's counsel stated:

> "I'm willing to stipulate as I have always been that there was a jury issue on the question of coverage[,] period. As attempting to cloak it in the terms of the wise men to the west as being fairly debatable and so on, I object to, but your Honor, there is no question but what there was evidence which presented a jury issue on coverage."

Significantly, the original trial court bifurcated the liability and damages issues from the coverage issue and ordered that the issues of liability and damages be held in abeyance until the determination of the coverage issue. The court of appeals in its certification memo-

randum stated that the evidence for and against coverage "was at least somewhat balanced."

We hold that Badger State did not act in bad faith in initially denying coverage to McCarthy. The record establishes a reasonable basis for Badger State's denial of coverage. Although the vehicle was registered in Mildred McCarthy's name, other items within the record suggest Steven McCarthy's ownership of the vehicle. Eugene McCarthy, Steven's father, stated that Steven paid for the car with money from Steven's own checking account, but that Eugene also "gave him some money." McCarthy apparently had approached his father about the idea of "buy[ing] the car" from a third party. Steven, according to the elder McCarthy, paid $150 for the car, but Mildred McCarthy's name appeared on the title. McCarthy never had to ask his father or mother for permission to use the car. Eugene McCarthy suggested that his son obtain insurance on the vehicle. In a statement made to a Badger State representative, McCarthy claimed that his mother owned the car on the date of the accident but that he had paid for it. One of the vehicle's occupants on the date of the accident stated that McCarthy said at the accident scene that he owned the car and that it was uninsured.

Although the record itself does not conclusively establish that the vehicle in question was covered under the elder McCarthy's insurance policy (that task was undertaken and resolved by the jury in the coverage trial), the record sufficiently establishes that Badger State was presented with a fairly debatable coverage issue. There is no absence of a reasonable basis for Badger State's denial of coverage. The record gives no indication that Badger State failed to properly investigate

the claim, or that important facts were recklessly ignored and disregarded. Badger State did not commit bad faith in failing to settle Mowry's claim within policy limits even though McCarthy's liability for the accident was probable and damages were concededly in excess of policy limits. The question of coverage under the policy was fairly debatable.

Badger State could have protected both its interests and its insured's interests by settling under a reservation of rights agreement, Mowry and the circuit court assert. The record reflects that Badger State's counsel and its claims manager considered such an option, but ultimately decided to pursue the bifurcation procedure. A reservation of rights agreement would result in a settlement of the injured's claims, while preserving the insurer's right to litigate the coverage issue. The insured benefits from this procedure because it is protected from excess judgment. Badger State argues, however, that the reservation of rights procedure will rarely result in the insurer's recouping the payments it made to the victim from the insured where coverage is found not to exist under the policy, because the insured may be judgment-proof.

An insurer is always at liberty to seek a reservation of its rights in settling a claim. But Badger State's failure to seek such a reservation in this case does not, by itself, constitute bad faith. Badger State merely sought a statutory mechanism to bifurcate the coverage issue from the liability and damages issues. To require an insurer to enter into a reservation of rights agreement in addition to proceeding within a separation framework would run contrary to the bifurcation allowed by sec. 803.04(2)(b), Stats. Even though Badger

State's determination that coverage did not exist was wrong, its mistake does not mean that it acted in bad faith in refusing to settle if the issue of coverage was fairly debatable. Although the mere ordering of a separate trial on the coverage issue is not conclusive that the coverage issue was fairly debatable, we cannot conclude that failure to enter into a reservation of rights agreement when a bifurcated trial has been granted is bad faith. We note that none of the cases cited by Mowry (e.g., *Luke, Comunale,* and *Johansen*) dealt with situations where the insurer sought and was granted a statutory separation procedure similar to sec. 803.04(2)(b).

Mowry argues that it is inherently unfair for McCarthy to be liable for a judgment in excess of policy limits when the judgment could have been wholly avoided had Badger State settled within policy limits when it had the opportunity to do so. But to require an insurer to settle any claim within policy limits where the insured's liability and the victim's damages in excess of policy limits are relatively certain, without consideration as to whether coverage exists, may result in extortionate lawsuits against the insurer. *See, Anderson,* 85 Wis. 2d at 693. Section 803.04(2)(b), Stats., provides some measure of protection against pressure settlement situations in which an insurer might find itself. We cannot penalize an insurer merely for utilizing such a mechanism. The bad faith standard, moreover, strikes an acceptable balance between the insurer's and insured's competing interests concerning settlement offers within policy limits where liability and damages in excess of policy limits are apparent.

We note that this court has endorsed the use of the separation mechanism to avoid conflicts of interest between the insured and the insurer. *Allstate Ins. Co. v. Charneski,* 16 Wis. 2d 325, 331, 114 N.W.2d 489 (1962). The separation procedure is, to some extent, mutually beneficial: The insurer is able to ascertain whether coverage exists prior to its indemnification of the insured; the insured is able to ascertain prior to the insurer's undertaking of his defense whether the defense would have had any taint of a conflict of interest due to a coverage question. Here, Badger State proposed a bifurcated trial on the issue of whether coverage existed under the insurance contract. The other parties stipulated to such a procedure.

Mowry asserts that even if an insurer is granted a bifurcated trial under sec. 803.04(2)(b), Stats., an insurer's duties to its insured should not be suspended pending the outcome of the coverage trial. We agree. Section 803.04(2)(b), authorizes the trial court to sever and try issues separately, at its discretion. The statute does not on its face affect the rights and duties to a contract. As we mentioned above, however, the existence of coverage under a contract precedes an insurer's duty to settle. The precise reason an insurer litigates a coverage issue is to release itself from any settlement and defense obligations. To require it to settle prior to the coverage trial is antithetical to the purpose of the bifurcation statute. Thus, the mere fact that an insurer refuses an offer to settle within policy limits during the pendency of a coverage trial does not mean that the insurer has breached a duty owed to its insured.

Nevertheless, we do not consider it to be unduly burdensome upon the insurer to require it to undertake the obligations attendant with the duty to settle. The insurer must still make a reasonably diligent investigation of the facts and circumstances underlying the accident. Likewise, an insurer still must undertake investigation of any new facts coming to its attention which would affect a reasonable settlement decision or affect a coverage determination. *See, Hilker,* 204 Wis. at 15–16. It must determine and fully disclose to the insured any likelihood of recovery beyond the policy limits. The insurer must keep the insured informed of any settlement offers from the claimant and the progress of any negotiations, even though it has denied coverage. *See, Baker,* 22 Wis. 2d at 83. Although these obligations normally arise upon the existence of the duty to settle, they also are elements of proper insurer conduct during the pendency of a coverage trial.

Mowry and the trial court point to language in *Alt,* 71 Wis. 2d 340, that suggests an insurer must settle within policy limits when it has the opportunity: "[A]n insurance company, in which is vested the exclusive control of the management of a case, breaches its duty when it has the opportunity to settle an excess liability case within policy limits and it fails to do so." 71 Wis. 2d at 348. First, we note that the quoted language from *Alt* does not mean that an insurer "must seize every opportunity to settle a claim within the policy limits," *Johnson,* 93 Wis. 2d at 645–46, especially when the insurer has raised a fairly debatable coverage issue. Also, *Alt* did not involve an issue of coverage, as exists in this case.

In *Alt,* the injured third party received a verdict well in excess of the insured's liability coverage. The victims, as assignees of the insured's claim, commenced an action against the insurer for its failure to exercise good faith in settlement of the victims' case. The general holding was that an insurer has a responsibility to its insured to affirmatively explore settlement opportunities. 71 Wis. 2d at 350, 351. The insurer in *Alt* never questioned that coverage existed under the policy. Here, however, Badger State denied coverage under the policy, based on its belief that coverage did not exist. In instances when coverage is denied based on a fairly debatable coverage question, we cannot conclude that an insurer breaches its settlement duty to the insured whenever it foregoes an opportunity to settle within policy limits. Rather, the inquiry is whether the insurer denied coverage in bad faith, i.e., whether the coverage question is or is not fairly debatable.

When the insured's liability for an accident is undisputed and damage clearly exceeds policy limits and yet the insurer seeks a separate trial on a coverage issue, the insurer and insured may still interact to avoid an excess judgment against the insured. For example, Mowry's counsel extended several settlement offers to Badger State after a stipulation had been reached and after a separation order had been granted. Although Badger State's acceptance of any of Mowry's offers would have been contrary to its decision to litigate the coverage issue—to be sure, a requirement that Badger State accept any such offers under penalty of bad faith would emasculate any benefit of the statutory separation procedure—Badger State still had the obli-

gation to inform its insured of settlement offers and negotiations. Once an insurer has rejected an offer, the insured should then have the opportunity to settle for the proffered amount. In this case, McCarthy may have wished to accept Mowry's $16,000 offer, thereby limiting his liability for Mowry's damages. If the coverage trial results in a finding of coverage, then the insurer would assume responsibility for its insured's indemnification. If coverage does not exist, then the insured will at least have limited its liability in what was concededly an excess liability case, rather than exposing itself to extensive liability. The victim should be willing to extend the same offer to the insured which it would extend to the insurer; if the victim is unwilling, the insurer and the insured might reasonably conclude that the offer was frivolous. An insurer may ignore a frivolous offer. *Baker,* 26 Wis. 2d at 313.

Because the trial court held that Badger State committed bad faith in refusing to negotiate or settle a claim within its policy limits and did not apply the fairly debatable standard to the coverage question, the trial court erred as a matter of law. We hold that when a coverage issue is fairly debatable, an insurer will not have acted in bad faith in refusing to settle within policy limits, even when the insured's liability for the incident is undisputed and when the victim's damages appear to exceed policy limits. Because no determination was made that the coverage issue was fairly debatable, the circuit court abused its discretion in holding that Badger State acted in bad faith and in holding it liable for McCarthy's excess judgment.

## BREACH OF CONTRACT CLAIM

Mowry contends that Badger State breached its contract with McCarthy in refusing to defend him in the action brought by Mowry. Such breach, when combined with a failure of a duty to settle, should result in liability to the extent of the insured's adverse judgment in excess of policy limits, he believes. Badger State argues that if it did breach its contractual duty, it should be liable for damages only to the extent of its policy limits.

The circuit court held that Badger State breached its contractual duty to defend McCarthy against Mowry's suit for damages. It essentially held that Badger State's refusal of a duty to defend coupled with its refusal to settle damaged McCarthy to the extent of McCarthy's liability in excess of the policy limits, in this case, $159,000.

Whether a party to a contract has breached a contractual obligation is a legal conclusion. "[W]here there is no ambiguity of expression, no dispute about the facts, and no uncertainty of meaning when the language is applied to the facts . . . the question is undoubtedly one of law for the court alone" to determine. *Vilas v. Bundy,* 106 Wis. 168, 176, 81 N.W. 812 (1900). Questions of law will be decided without deference to the trial court and court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

It is undisputed that a liability insurer generally has a contractual duty to defend its insured in an action for damages. *Gross v. Lloyds of London Ins. Co.,*

121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984); *United States Guarantee Co. v. Liberty Mut. Ins. Co.*, 244 Wis. 317, 321, 12 N.W.2d 59 (1943). The applicable clause in the instant contract reads,

> "[T]he company shall, with counsel of its choice, defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent. . . ."

We fail to see, based on the facts before us, how Badger State could be held to have breached its duty to defend McCarthy against suit brought by Mowry. Badger State initially denied coverage because it believed that coverage under the policy was fairly debatable. But it expressly assumed the defense of McCarthy on January 10, 1980, after the coverage trial and after a jury determined that coverage existed. It thereafter negotiated a settlement with the claimant. One element of the settlement was that McCarthy would assign any rights of action he might have against Badger State to Mowry in consideration for the satisfaction of Mowry's judgment against McCarthy. Badger State also paid out the limits of its insured's policy in partial satisfaction of the settlement.

An insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages. Section 803.04(2)(b), Stats., states that the court upon ordering separate trials "shall specify in its order the sequence in which such trials shall be conducted." Thus, we have noted that an insurer may be required to furnish a free

528

defense to its insured prior to the determination of coverage. *See, Charneski,* 16 Wis. 2d at 331–32.[4]

Badger State was not required to provide a free defense in this case because the coverage trial preceded a trial on liability and damages. And Badger State extended the defense it was contractually required to provide to its insured once there was a finding of policy coverage. Instead of providing counsel to defend against the victim's suit, Badger State's defense took the form of negotiating a settlement on behalf of Badger State's insured; the settlement included an assignment of rights in satisfaction of the excess damages award against McCarthy, thereby effectively shielding McCarthy from the effects of the excess liability. Badger State had no opportunity to defend its insured in a suit for damages, because a trial was rendered unnecessary by the settlement stipulation. There was no other suit in which Badger State could have defended its insured, but did not.

Because the prerequisite for a discussion of breach of contract damages is not present, we have no opportunity to discuss the proper measure of breach of duty to defend damages. The trial court erroneously held that Badger State breached its contractual duty to de-

[4] In many cases policy defenses are tried prior to the determination of the liability and damages issues. *Iowa Nat. Mut. Ins. Co. v. Liberty Mut. Ins. Co.,* 43 Wis. 2d 280, 288, 168 N.W.2d 610 (1969).

It would seem that, once an order to bifurcate has been made, a trial on a coverage issue should be a relatively simple matter. We, therefore, encourage a court which has ordered bifurcation to expedite the coverage issue by placing the trial on its calendar at an early date to assist in avoiding a needlessly protracted claim against the insured.

fend McCarthy; the judgment against Badger State for damages of $159,000 purportedly caused by such breach is also in error.

*By the Court.*—The judgment of the circuit court is reversed. The cause is remanded with directions to dismiss the complaint.

STEINMETZ, J. *(concurring).* I agree with the conclusion of the majority, but I write separately to emphasize that the duty to settle is not a contractual duty, as the dissent contends. Rather it is a fiduciary duty which only arises when the insurer assumes the exclusive management and control of the insured's defense. Because Badger State did not assume exclusive control of the management of the action against its insured, the insurer did not have a fiduciary duty to settle.

An insurer's duty to settle is not a contractual duty under the insurance policy in this case. The policy does not specify any such duty and this court has consistently held that the duty is not contractual in nature. In *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 13, 231 N.W. 257, 235 N.W. 413 (1930, 1931), this court first considered the issue of whether an insurer had a duty to settle. Although the court recognized a duty to settle, it nonetheless carefully noted that the duty arose from the fiduciary relationship between the insurer and the insured, rather than the contract itself. The court specifically stated that "the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim." *Id.*

In *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 687, 271 N.W. 2d 368 (1978), the court again emphasized that the obligations recognized in *Hilker* derive

from the fiduciary relationship between the insurer and the insured and not from a contractual duty. In fact, this court has consistently analyzed failure to settle cases as involving the "breach of a known fiduciary duty." *Johnson v. American Family Mutual Ins. Co.*, 93 Wis. 2d 633, 646, 287 N.W. 2d 729 (1980); *Alt v. American Family Mutual Ins. Co.*, 71 Wis. 2d 340, 348, 237 N.W. 2d 706 (1976). Consequently, the basis for liability in such cases is negligence. *Id.* at 354. In fact, "the burden of proof is higher than that required in most negligence cases. The claimant must assume the middle burden of proof, and the breach of the insurer's duty must be proved by clear and convincing evidence." *Id.*

The distinction between a fiduciary duty to settle and a contractual duty to settle has not been inadvertently recognized. This court's decision in *Ott v. All-Star Ins. Corp.*, 99 Wis. 2d 635, 645–46, 299 N.W. 2d 839 (1981), specifically addressed the question whether the duty to settle is contractual. We stated in that decision that "[s]uch action, although it, of course, 'arises from' the contractual relation of the parties to an insurance policy, is founded in tort. . . . *The insurer's liability under the action is thus often referred to as 'extracontractual.'* " (Emphasis added.) *Id.* The extracontractual nature of the duty to settle was critical to the decision in *Ott,* in which we held that liability for failure to settle was not a proper subject for reinsurance:

> "As stated above, *an insurer's liability to his insured for tortious failure to settle within policy limits is 'extra-contractual.' Because such liability is not a risk against which protection is extended to the insured,* it cannot, under the above definitions, be a proper subject for 'reinsurance.' By definition

531

such risk cannot be reinsured." *Id.* at 652. (Emphasis added.)

In light of this authority, and the other authorities cited above, there can be no question that the duty to settle is not a contractual obligation.

The only contractual obligations under this liability policy are the duty to indemnify and the duty to defend. *See Gross v. Lloyds of London Ins. Co.,* 121 Wis. 2d 78, 84, 358 N.W. 2d 266 (1984). Here, Badger State did not breach either obligation. It assumed the defense of the insured after the coverage trial, whereupon it negotiated a settlement with the claimant. Badger State also paid out the limits of the insured's policy in partial satisfaction of the settlement. The insurer therefore fulfilled its contractual duties to defend and to indemnify. The dissent therefore incorrectly would impose breach of contract liability on the insurer.

Badger State also did not breach the fiduciary duty to settle because that duty did not arise in this case until after Badger State assumed its insured's defense. The fiduciary duty to settle arises only when the insurer actually undertakes the management and control of an insured's case. The seminal case recognizing an insurer's duty to settle is *Hilker.* That case unequivocally bases such a duty on the fact of the insurer's exclusive control and management of the claim against the insured. The following passage from *Hilker,* 204 Wis. at 13–14, clearly states the basis for the duty to settle:

> "In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this re-

spect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. It is generally understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance. So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the insurer to the insured arises. It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense. It is quite apparent that this right was given to the insurance company to induce it to enter into the contract of insurance, and that it is a necessary right to be possessed by it if it is to write the insurance upon the terms stipulated. It is a right to be exercised by the insurer in its own interest."

The *Hilker* decision then imposed two settlement related duties on insurers: (1) the insurer must make a

diligent effort to ascertain the facts upon which a good faith judgment may be predicated; and (2) the insurer must determine the probability that recovery will exceed the policy limits and make a full disclosure to the insured so that the insured may protect himself to the extent possible.

In *Baker v. Northwestern Nat. Casualty Co.*, 22 Wis. 2d 77, 83, 125 N.W. 2d 370 (1963), the court added a third duty related to the duty to settle, and again, the court directly premised the duty on the insurer's exclusive management of the case involved. The court stated:

> "In addition to the duties stressed in the Hilker Case there must be added a third duty which is imposed upon the insurer *as a result of the insured's surrendering to it the sole control of all settlement negotiations,* namely, that of keeping the insured timely and adequately informed of any offers of settlement received from the claimant and of the progress of any settlement negotiations." (Emphasis added.)

Finally, in *Howard v. State Farm Mut. Automobile Ins. Co.*, 60 Wis. 2d 224, 227, 208 N.W. 2d 442 (1973), the court expressly made clear that the duty to settle is contingent on the insurer actually undertaking the exclusive management of the case:

> *"When, as here, the insurer undertakes and controls the defense of a claim against its insured,* it has a duty not only to protect itself to the extent of its liability but it must act in good faith to protect the interest of its insured. If it fails to do so it is liable to its insured for the amount the insured required over and above the policy limits." (Emphasis added.)

Here, the factual predicate for the duty to settle is not present. Badger State expressly refused to defend the insured until after the coverage trial. In this situation, there is no need to make Badger State a fiduciary for the insured because the insured is not disabled from defending himself. Thus, I would conclude that Badger State did not have a duty to settle. As a result, it is unnecessary to even reach the question whether the insurer breached the duty.

The majority's conclusion does not cause the unfair result that the dissent claims. The dissent would resolve this case in favor of the insured solely on the basis that the insured cannot protect its own interests when the insurer refuses to defend or settle and, therefore, it is unfair to make the insured bear the risk of a rejected settlement offer. In fact, the fundamental premise of the dissent is false. It is unquestioned that the insured has the authority to *reasonably* settle a claim against him where the insurer refuses to defend, despite any consent to settlement clause in the policy. The court resolved this question in *United States Guarantee Co. v. Liberty Mut. Ins. Co.,* 244 Wis. 317, 321, 12 N.W. 2d 59 (1943):

> "The refusal of the defendant to perform its obligation to defend this action constituted such a breach of its contract as to release the assured or its subrogee from the condition contended for [the insurer's consent to settle]. In effect, it amounted to a waiver of this condition."

*See also Patrick v. Head of Lakes Cooperative Elec. Ass'n.,* 98 Wis. 2d 66, 72–73, 295 N.W. 2d 205 (Ct. App. 1980) (when an insurer refuses to defend, it loses the right to control the defense or the settlement of the action).

The dissent's incorrect assumption that the insured cannot protect his own interests prior to the insurer's assumption of the defense also results in an incorrect measure of damages. The measure of damages when an insurer breaches its duty to defend includes: (1) the insured's costs for defending the suit; (2) the amount recovered from the insured, either by way of judgment or settlement, up to the policy limits; and (3) any additional damages caused by the insurer's breach. *See American Motorist Ins. Co. v. Trane Co.,* 544 F. Supp. 669, 689 (W.D. Wis. 1982). The insured's damages are limited to the applicable policy limits because the insured, under its duty to mitigate damages, must defend against the claim. *See Buckner v. Buckner,* 207 Wis. 303, 312, 241 N.W. 342 (1932). I believe the same rationale requires that the damages for refusing to settle, assuming liability, be similarly limited.

The refusal to defend gave the insured the right to settle, and, therefore, any excess judgment was not caused by the insurer's breach. The measure of contract damages in Wisconsin is the amount of the loss "which arise[s] 'naturally, according to the usual course of things,' from the wrong, and must be such as is 'reasonably to be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it.' " *Reiman Associates v. R/A Advertising,* 102 Wis. 2d 305, 320, 306 N.W. 2d 292 (Ct. App. 1981). Because the insured becomes obligated to defend, *Buckner,* 207 Wis. at 312, the size of the ultimate verdict is not increased by the insurer's failure to defend. In the absence of a bad faith refusal to defend, therefore, the insurer is only liable for the limits of policy coverage and the cost of the insured's defense.

The fact that the injured party did not make his settlement offer directly to the insured does not affect the majority's analysis. The insurer is not responsible for the injured party's failure to address its settlement offer to the appropriate party. This is particularly true in this case where Badger State expressly rejected the offer because it had not accepted the insured's defense. The injured party also knew that the insured was represented by alternative counsel prior to the coverage trial. In this situation, Badger State reasonably could assume that the injured party would make its offer directly to the insured, if it truly wanted to settle the case. I believe, however, that the injured party did not want to settle the case for the nominal value of its offer, and for that reason, he intentionally did not make his offer to the insured. He knew that he could only receive full compensation for his injuries, given the insured's lack of personal resources and the low policy limits, if the insured had a bad faith claim against his insurer. Thus, the injured party offered to settle only with Badger State because it knew that the insurer would not settle before the coverage trial. The injured party's insincere interest in settling clearly is indicated by his withdrawal of the offer immediately before the coverage trial. I conclude that the excess judgment against the insured is the result of the injured party's unwillingness to actually settle the case for a nominal amount, rather than any fault of the insurer.

I concur in the majority's decision.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The issue is who should bear the loss resulting from an insurance company's mistaken decision that its policyholder was not covered by the policy where: (1) the in-

surance company never disputed that the policyholder was liable for the damages and that the damages would far exceed the policy limits; (2) the insurance company refused to pay the policy limits in settlement of the case; and (3) the policyholder was found to be covered and was later found liable for nearly ten times the offered settlement.

It does not seem fair to impose the loss on the policyholder. He did not write the policy, he did not control the progress of the litigation, and he was ultimately vindicated by the court's holding that he was covered by the policy. The insurance company made a mistake—an honest mistake—but a mistake nevertheless.

It also does not seem fair to impose the loss on the insurance company. The company reasonably believed that the policyholder was not covered. If the loss is placed on the company, insurance companies may be coerced into settling doubtful coverage cases. Insurance companies should not be forced to pay policy limits for matters they did not contract to insure. The companies' expenses of settling the "doubtful coverage" cases—which include noncoverage cases—will be borne by the policyholders in the form of ever-increasing premiums.

This is not an easy case. The majority puts the loss on the policyholder, holding that the insurance company should not bear the risk of its mistaken dispute of coverage. I would put the loss on the insurance company.

In determining who bears the loss we must remember we are dealing with an insurance contract. The policyholder buys insurance to avoid the risk of loss. The insurance company is in the business of evaluating

risks, assuming risks, and spreading the costs of the risks. The company in this case had a conflict of interest. Its own interest was to litigate the coverage question and avoid paying $16,000. The policyholder's interest was to have the company pay policy limits in settlement of the case to avoid liability for excess damages. In refusing to pay policy limits in this case, the insurance company decided to impose a risk on the policyholder. As it turned out, the insurance company was wrong about the coverage. It seems to me that under these circumstances the company—not the policyholder—should suffer the consequences of the company's erroneous decision.

Imposing liability on the insurance company in this case comports with basic principles of contract law. As the majority recognizes, the insurance policy is a contract and the company has a contractual duty to defend the policyholder and to use reasonable good faith efforts to settle or compromise a claim against the insured. P. 510. The general rule is that a party who does not perform under the contract—even in a good faith belief that it need not perform under the contract—is responsible for losses resulting from the breach of the contract. In this case the company refused to pay policy limits and settle the claim because it had doubts about coverage. I would treat a company's refusal to pay based solely on the company's mistaken belief about coverage as a breach of contract and would apply the general rule of damages for this breach of contract. The insurance company must pay damages to put the policyholder in the same position he would have been in had the insurance company fulfilled the insurance contract.

Another reason for imposing liability on the insurance company is that the company is in a better position than the policyholder to avoid the loss. As the majority explains, the insurance company could have settled the case reserving rights against the policyholder in the event of a finding of noncoverage. I recognize that many policyholders may not be able to reimburse the company. But in this case the insurance company made no effort to explore this possibility.

Furthermore, the insurance company in some cases may be able to protect itself from liability for damages in excess of policy limits by litigating the coverage issue before a settlement offer is made. In this case the insurance company failed to litigate the issue of coverage promptly. The victim commenced the action within 10 months of the date of the accident. The insurance company answered the complaint a year later. The statutory time for answering is 20 days. Section 802.06 (1). The answer denied coverage under the policy. The insurance company did not request a bifurcated trial on the issue of coverage, sec. 803.04 (2)(b), until 6 months after its answer, and then only after the insurance company received an offer to settle within policy limits. A full year and a half had elapsed between the commencement of the action and the insurance company requested a separate trial on the issue of coverage. As the majority points out, pp. 507–508, were it not for the coverage issue, the insurance company surely would have accepted the offer to settle given the policyholder's liability for the accident and the nature of the damages. The insurance company might have been able to avoid getting itself into the predicament of turning down a settlement offer had it litigated cover-

age promptly. The company did not act promptly in this case and should be liable for the loss.

This case involves the conflicting interests of the policyholder, the insurance company, and the public. For the reasons set forth I conclude that in a case like this where liability and damages in excess of policy limits were undisputed, where the insurance company did not take steps to litigate the coverage question promptly, and where the insurance company erred in asserting that there was no coverage, the insurance company should be liable for damages for erroneously failing to pay policy limits and for erroneously failing to accept the offer of settlement.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins in this dissent.