Wilbur W. WARREN, III, Plaintiff-Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 84–454. Submitted on briefs November 7, 1984.—
Decided December 10, 1984.*
(Also reported in 361 N.W.2d 724.)

For the defendant-appellant the cause was submitted on the briefs of *Bell, Metzner & Gierhart, S.C.*, with *Robert J. Kasieta* of counsel, of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Warshafsky, Rotter, Tarnoff, Gesler & Reinhardt, S.C.*, with *Randall E. Reinhardt* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J. American Family Mutual Insurance Company (American) appeals from a judgment entered upon a jury verdict which found that American acted in bad faith by failing to settle a claim against its insured James Leslie (Leslie).

American argues that the trial court erred in denying its motion for a directed verdict and that there was no credible evidence to support the jury's finding of bad faith. Because there was credible evidence of bad faith, we affirm the trial court's denial of the motion for a directed verdict and the jury's verdict.

An automobile accident occurred on April 26, 1976, when Leslie, who was traveling on a road in Kenosha county, stopped without warning allegedly to avoid striking an animal. Two other cars behind Leslie stopped without incident. The driver of the third car, James Lawson (Lawson), was struck from behind by a fourth car driven by Richard Meyers (Meyers). Lawson sued Meyers and his insurance company in Kenosha county court. Meyers' insurance company then added Leslie and American as third-party defendants, alleging that Leslie's negligence contributed to the accident. Lawson later added Leslie and American as direct defendants.

Alan Clack (Clack), of the law firm of Thompson & Coates, was retained by American to represent the insured, Leslie. The firm began to investigate the case and an "excess letter" was sent to Leslie telling him that he would be liable for the excess if a judgment was entered against him exceeding the $15,000 policy limit. Clack concluded that Leslie was not liable for the accident. In April, 1978, the attorney for the plaintiff Lawson asked for the $15,000 policy limit in settlement of Lawson's claim against Leslie. Clack rejected the settlement offer. On the eve of trial, upon learning that a passenger with Leslie at the time of the accident might be a hostile witness, Clack offered $7,500 in settlement of the case. The $7,500 offer was rejected by Lawson's attorney.

The case was tried before a jury which found both Leslie and Meyers negligent, assigning twenty-five percent to Leslie and seventy-five percent to Meyers. Thus, he and Meyers were held jointly and severally liable for the $224,500 that exceeded their respective insurance policy limits.

Wilbur W. Warren, III (Warren) was appointed as a receiver for Leslie and Leslie assigned the instant action to Warren. Warren sued American for bad faith in refusing to settle the underlying negligence case within Leslie's $15,000 policy limit. American moved for a directed verdict and the trial court denied the motion. The trial court also denied American's motion for judgment notwithstanding the verdict and entered a judgment in favor of Warren for $294,025.75. Additional facts will be recited in the opinion.

The standard of review upon the denial of a motion for directed verdict is whether, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion was made, there is any credible evidence to sustain a finding in favor of that party.[1] If there is any credible evidence to sustain a cause of action, the case must be submitted to the jury.[2] Except in the clearest of cases, a trial judge should withhold ruling on a directed verdict and permit the question to go to the jury.[3]

American argues that Clack did not intentionally act in bad faith and that evidence of negligence in failing to settle the claim is insufficient to establish bad faith.

The two special verdict questions are not contested by American, but they are worth repeating for the sake of

[1] See sec. 805.14(1), Stats; *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis. 2d 314, 338, 291 N.W.2d 825, 837 (1980).

[2] *Id.*

[3] *Id.* at 339, 291 N.W.2d at 837.

explaining bad faith. The first question asked whether American breached any of its duties to Leslie in handling Lawson's claim. The jury answered "yes."

Certain duties arise on the part of an insurance carrier which stem from the fiduciary relationship between the insurer and the insured. These include the following: the duty to make a diligent effort to ascertain the facts; the duty to indicate to the insured that a recovery could exceed the indemnity, if an investigation reveals such a probability; and the duty to keep the insured informed of offers of settlement and settlement negotiations.[4] The extent and the character of the negligence resulting from a breach of the above duties are factors to be considered by the jury in weighing the matter of bad faith.[5]

The second special verdict question, also answered affirmatively by the jury, asked whether the failure of American to perform its duties demonstrated such a significant disregard of Leslie's interests that the insurance company's final decision not to settle was made in bad faith.

Bad faith has been described as being more than mere negligence on the part of the insurance company in deciding to litigate rather than settle.[6] It is only when conduct evinces a significant disregard of the insured's interests that bad faith may be found.[7]

In recent cases, our supreme court has labeled bad faith an intentional tort[8] and has established the following

---

[4] *Baker v. Northwestern Nat'l Casualty Co.*, 26 Wis. 2d 306, 310, 132 N.W.2d 493, 496 (1965).

[5] *Id.* at 315, 132 N.W.2d at 498.

[6] *Id.* at 314–15, 132 N.W.2d at 498.

[7] *Id.* at 316, 132 N.W.2d at 499.

[8] *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978).

test which recognizes the intentional nature of a bad faith claim.

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.[9]

. . . .

"[I]mplicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred . . . where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured."[10]

Thus, in addition to determining whether the insurance company has breached its duties to the insured, the above-mentioned test must be met to show bad faith.

In this case, the record shows that Clack was primarily responsible for Leslie's defense and that other members of his firm did some work on Leslie's case. Clack personally spent very little time on the case and did not meet Leslie until twenty months after the firm received the case. By March, 1978, Clack's firm notified American that Lawson's damages and disability appeared to be snowballing and that Meyers' testimony could be a basis for claiming negligence on the part of Leslie. Leslie was not informed of these developments. Also in March, Clack's office asked American what Leslie's policy limits were—this question coming almost two years after Clack was retained. Leslie was sent an excess letter which informed him of his potential liability for any amount exceeding his coverage. In April, 1978, Clack refused the $15,000 offer of settlement. In a letter dated April 17, the plaintiff's attorney described the damages as "catastrophic" and predicted they could amount to more than

[9] *Id.*

[10] *Id.* at 693, 271 N.W.2d at 377.

$100,000. In another letter, written by the plaintiff's attorney to Clack shortly after the expected date of trial was postponed, the extent of the damages was reiterated and Clack's "position of no liability" was labeled "foolish and reprehensible" by the plaintiff's attorney.

Clack also admitted at trial that inconsistencies existed in some depositions including the fact that only Leslie and his girlfriend claimed seeing an animal crossing the road and that Leslie never gave any reason for stopping when initially questioned by the police. Additionally, the driver of the van which stopped directly behind Leslie testified that he saw nothing in the road. Leslie's girlfriend, in her second deposition, also testified that Leslie's driving that night was reckless and that he was acting strange. Lawson and Meyers also testified in depositions that Leslie was driving erratically.

Clack said that no attempt was made to conduct an independent medical examination of Lawson. He also acknowledged that he was aware of one doctor's opinion that Lawson was permanently disabled. Two attorneys also testified that American breached its duty to Leslie in failing to settle the case.

Based on the above evidence, we conclude that there was credible evidence to sustain Warren's claim for bad faith, and therefore the directed verdict was properly denied. The jury could reasonably have concluded that American breached its duties to Leslie. The evidence also was sufficient to show the necessary intent to act in bad faith—that is, a reckless disregard of the lack of a reasonable basis for denying the claim. We also conclude that there was credible evidence to support the jury's verdict.

American also argues that fraud or actual dishonesty must be established to prove bad faith, that there was no evidence of dishonesty, and that Clack had a *bona fide*

belief that he could defeat Lawson's claim, therefore, bad faith cannot be found. Bad faith "carries with it a suggestion of dishonesty" and is "a species of fraud."[11] The trial court properly noted that this is not the "bandana and pistol" type of dishonesty, and said "when an insurance company's conscious decision not to settle a case within policy limits is the product of egregious failure on the company's part to perform the duties that it owes to its insured, then that conscious decision to expose its insured to a trial is deceitful and dishonest in the law."

We agree with the trial court's statement that the "suggestion of dishonesty" is the equivalent of bad faith. The term "suggestion of dishonesty" has been used to define bad faith.[12] It has been used synonymously with bad faith and not as a separate element of bad faith which must be proven. The trial court properly refused to direct a verdict for American based on the alleged lack of proof of dishonesty.

Finally, we conclude that whether Clack had a *bona fide* belief that he could defeat Lawson's claim was a fact question for the jury. There was credible evidence pointing to the conclusion that Clack's belief that he could defeat the claim on liability was not *bona fide*. The trial court properly submitted the question to the jury and we will not disturb the jury's finding.

*By the Court.*—Judgment affirmed.

[11] *Baker, supra* note 4, at 315, 132 N.W.2d at 499.
[12] *Id.*