COURT OF APPEALS
DECISION
DATED AND FILED

September 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2532**

STATE OF WISCONSIN

Cir. Ct. No. 2019TP19

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L. L. S.-P., A PERSON UNDER THE AGE OF 18:

S. S. AND L. S.,

PETITIONERS-RESPONDENTS,

V.

A. S.-P.,

RESPONDENT-APPELLANT,

M. P.,

RESPONDENT.

APPEAL from orders of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1    STARK, P.J.[1]    Amanda appeals orders terminating her parental rights to her daughter, Lauren, and denying her postdisposition motion.[2]  Lauren's guardians filed a petition for termination of Amanda's parental rights (TPR), alleging, as relevant to this appeal, that Amanda abandoned Lauren during two specific six-month periods.  The matter was tried to a twelve-person jury, which was instructed that there were two abandonment periods at issue, but it was not instructed that it should separately consider each period of abandonment when answering the verdict questions.  The jury found that Amanda had abandoned Lauren, but the verdict form did not permit the jurors to specify the period or periods of abandonment on which they agreed.  Amanda therefore argues that she was deprived of her statutory and constitutional rights to a verdict by five-sixths of

---

[1] Pursuant to WIS. STAT. § 752.31 (2023-24), cases under WIS. STAT. ch. 48 (2023-24) are decided by one judge.  However, upon reviewing the briefs in this matter, this court determined that an issue raised by the appellant warranted consideration by three judges and subsequently sua sponte ordered that this case be decided by three judges.  *See* WIS. STAT. RULE 809.41(3) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  RULE 809.107(6)(e).  Conversion to a three-judge panel, in conjunction with conflicts in this court's calendar, has resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.  We do the same for the child, the child's biological father, and the child's guardians.

We note that Amanda's notice of appeal was taken from the order terminating her parental rights.  During the pendency of her appeal, Amanda filed a postdisposition motion.  We granted a stay for the circuit court to decide the postdisposition motion, then granted Amanda's motion to extend the time for filing the statement on the transcript.  As a result, we consider both the order terminating Amanda's parental rights and the order denying her postdisposition motion.

2

the jury on each of the alleged TPR elements during the grounds phase of the TPR process.[3]

¶2     Amanda failed to raise this issue in the circuit court, and she therefore claims that her trial counsel rendered ineffective assistance by failing to object to the jury instruction and verdict form.  Because this issue is one of first impression in Wisconsin, we affirm the circuit court's conclusion that trial counsel did not perform deficiently by failing to object to the jury instruction and verdict form, as the law on this issue is unsettled.

¶3     We further affirm the circuit court's denial of Amanda's motion for a directed verdict after the close of the evidence, as viewing the evidence in the light most favorable to the guardians, there was sufficient evidence of Amanda's abandonment to permit the jury to decide the issue.

¶4     We conclude, however, that both the circuit court's failure to instruct the jury that it must consider each period of abandonment separately when answering the verdict and the court's use of a special verdict form that failed to specify during which period or periods Amanda was alleged to have abandoned Lauren constituted plain error.  This is because these errors deprived Amanda of her obvious and substantial right to a verdict by five-sixths of the jury on each of the elements of abandonment.  Whenever multiple periods of abandonment are alleged at trial, the jury instructions and verdict forms must require the jury to

---

[3] A contested TPR proceeding involves a two-step procedure. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402.  The first step is a factfinding hearing, in which a jury or circuit court determines "whether any grounds for the termination of parental rights have been" proved.  *Id.*, ¶26 (quoting WIS. STAT. § 48.424(3)).  The termination proceedings then move to the second step, a dispositional hearing, at which the circuit court must consider the best interests of the child.  WIS. STAT. § 48.426(2).

make a separate determination as to each alleged abandonment period. Further, we determine that these errors were not harmless under the facts of this case. Accordingly, we reverse the order terminating Amanda's parental rights to Lauren and the order denying Amanda's postdisposition motion and remand to the circuit court for a new factfinding hearing.

## BACKGROUND

¶5 Lauren was born to Amanda and Matthew in February 2010. In September 2014, when Lauren was approximately four and one-half years old, she was found to be a child in need of protection or services (CHIPS), and was removed from Amanda's care due to Amanda's struggles with alcoholism. Lauren was placed with Lisa and Shawn Smith, Lauren's maternal aunt and her husband. Amanda was unsuccessful in completing the conditions for Lauren's return home, and in 2017, the Smiths were granted guardianship of Lauren over Amanda's objection.

¶6 In July 2019, the Smiths filed a petition for the termination of Amanda's and Matthew's parental rights, alleging grounds of abandonment and failure to assume parental responsibility under WIS. STAT. § 48.415(1) and (6), respectively. Amanda and Matthew[4] exercised their right to a jury trial during the grounds phase of the TPR process. *See* WIS. STAT. § 48.422(4).

¶7 As relevant to this appeal, the Smiths argued at trial that Amanda abandoned Lauren during two separate six-month periods: from

---

[4] Matthew is not participating in this appeal. We do not mention him further.

4

November 1, 2017, to May 1, 2018; and from January 1, 2019, to July 1, 2019. We briefly summarize the trial testimony pertinent to these allegations.

¶8      Regarding the first alleged period of abandonment, Amanda testified that from November 2017 to May 2018, she was living in Green Bay and Lauren was residing with the Smiths.[5]  Amanda stated that while she did not have any contact with Lauren during this time period, she did communicate with Lisa via email, and she asserted that her lack of direct contact with Lauren was not her fault.

¶9      Amanda testified that prior to the guardianship, i.e., from September 2014 to April 2017, she was very involved in Lauren's life.  Amanda explained that she had frequent visits with Lauren, both supervised and unsupervised.  Many of Amanda's supervised visits with Lauren took place at the Beacon Center, a supervised visitation center that was offered as a service to Amanda by the Brown County Department of Health and Human Services (DHHS).  When the guardianship was granted, DHHS stopped providing services to Amanda, including use of the Beacon Center for visits with Lauren.

¶10     Amanda testified that thereafter, Lisa began to exclude her from contact with Lauren and from participating in Lauren's activities.  For example, Amanda was told she was no longer welcome to attend Lauren's gymnastic classes, and Lisa prohibited her from having lunch with Lauren at her school.  Amanda stated that after the guardianship was granted, she attempted to establish a visitation schedule through Lisa, but Lisa denied visitation on all the days that

_____

[5]  Lisa testified that she and Shawn were residing in Green Bay at this time.

5

Amanda requested, and the Smiths did not allow her any visits with Lauren. Further, Lisa did not update Amanda on Lauren's activities during the guardianship, which Lisa had agreed to do.

¶11 Amanda testified that she emailed Lisa on April 22, 2018, asking to see Lauren, noting that Lisa had not been returning her calls or texts and that she was not being allowed to see Lauren at school. Amanda included her then-current phone number in the email, and the email was received into evidence. Amanda did not recall Lisa responding to that email.

¶12 Lisa testified that, after the guardianship was ordered, it was Amanda's responsibility to contact her and schedule visits with Lauren. Lisa acknowledged that under the guardianship order, she was required to keep Amanda updated on Lauren's extracurricular activities and she admitted she did not always do so. Lisa stated that her relationship with Amanda became "a little difficult" after the guardianship was ordered and that they then began to communicate with each other exclusively by email. Lisa testified that Amanda's April 22, 2018 email was the first time she heard from Amanda after the guardianship was ordered in April 2017, and she stated there was no contact between Amanda and Lauren in 2018 or 2019.

¶13 Lisa denied interfering with Lauren and Amanda's relationship. She testified that she believed she responded to every email she received from Amanda. She acknowledged that she did take a lot of weekend trips but stated she did not do so to keep Lauren from Amanda. She also denied sending a letter to Lauren's school saying that Amanda could not visit Lauren there.

¶14 In May 2018, Amanda filed a petition to terminate the guardianship, arguing that good cause existed to remove the Smiths as guardians and that there

had been a substantial change in her circumstances. In August 2018, Amanda also filed a petition to revise the guardianship order. These petitions were resolved through mediation with Amanda, the Smiths, and a guardian ad litem (GAL). The parties agreed that Amanda and Lauren would both see counselors and that the GAL would check on their progress to see if they could participate in therapy together. Lauren's therapist would decide when Lauren was ready to be reintroduced to Amanda.

¶15 Regarding the second alleged period of abandonment, Amanda testified that from January 2019 to July 2019, she continued to live in Green Bay, where Lauren continued residing with the Smiths. Amanda acknowledged that she did not have any contact with Lauren during this period. However, Amanda testified that she sent several emails to Lisa during this period asking for updates on Lauren, asking whether she could purchase things for Lauren, and sending Lauren birthday wishes. Amanda also discussed, and entered into evidence, emails that she sent on January 29, 2019, and March 13, 2019, to her prior counsel and Lauren's GAL asking for information on the status of Lauren's counseling and attempting to schedule an appointment with Lauren's therapist. Amanda stated that she never received a response from the GAL or her counsel regarding her requests to establish counseling with Lauren.

¶16 Lisa acknowledged that she received emails from Amanda in January and February 2019, and she stated that she responded to some of those emails. Aside from the emails, Lisa testified that she did not have any contact with Amanda from January 1, 2019, through July 1, 2019. Lisa reiterated that it was her understanding that Amanda remained responsible for scheduling visits with Lauren both before and after the guardianship was ordered.

¶17 After the Smiths rested their case, Amanda moved for a directed verdict as to both of the alleged periods of abandonment as grounds for the TPR. Amanda contended that there was not any "legally sufficient evidentiary basis for a reasonable jury to reach a different conclusion other than she has not abandoned her child" during either timeframe because the emails presented at trial showed that she communicated with Lisa during the alleged periods of abandonment. The circuit court found there was sufficient evidence for a jury to find that Amanda abandoned Lauren, and it denied Amanda's motion as to both of the abandonment periods.

¶18 Relevant to the ground of abandonment, the circuit court instructed the jury that the special verdict would be comprised of seven questions. For the first three questions, the burden was on the Smiths to prove those elements "by evidence that is clear, satisfactory and convincing to a reasonable certainty," and for the remaining four questions, the burden was on Amanda to prove those elements "by the greater weight of the credible evidence to a reasonable certainty."

¶19 The circuit court then advised the jury that the TPR petition alleged that Amanda abandoned Lauren "for the time period of November 1, 2017, to May 1, 2018," and that the petition also alleged "that [Lauren] has been abandoned from the time period of January 1, 2019, to July 1, 2019." Regarding Amanda's defense to abandonment, the court instructed the jury that it had to determine whether Amanda "had a reasonable opportunity to visit or communicate with [Lauren] or communicate with the persons who had physical custody of [Lauren] during *that* period." (Emphasis added.)

8

¶20 The jury answered "Yes" to questions one, two and, three on the special verdict form, which asked, respectively, "Was [Lauren] left by [Amanda] with a relative or other person?," "Did [Amanda] know, or could she have discovered, [Lauren's] whereabouts?," and "Did [Amanda] fail to visit or communicate with [Lauren] for a period of 6 months or longer?" Question four asked, "Did [Amanda] have good cause for having failed to visit with [Lauren] during that period?," which the jury answered, "No." Because the jury answered "No" to question four, the remaining questions were intentionally left blank.[6] *See* WIS JI—CHILDREN 314 (2018). Two jurors dissented from the abandonment verdict. The jury also returned a verdict finding that Amanda did not fail to assume parental responsibility for Lauren.

¶21 During the dispositional phase of the TPR process, the circuit court entered an order terminating Amanda's parental rights to Lauren after determining that it would be in Lauren's best interests to do so. Amanda then filed a postdisposition motion to vacate the TPR order, arguing that she was denied constitutionally effective assistance of counsel based on her counsel's failure to object to the jury instructions and verdict form because they failed to require the jury to separately consider whether she abandoned Lauren during each specific time period alleged. After a *Machner*[7] hearing, the circuit court denied Amanda's motion, stating that the issue Amanda argued "is still unsettled law" and that

---

[6] Question five asked, "Did [Amanda] have good cause for having failed to communicate with [Lauren] during that period?" Question six asked, "Did [Amanda] communicate about [Lauren] with the persons who had physical custody of the child during that period?" Question seven asked, "Did [Amanda] have good cause for having failed to communicate about [Lauren] with the persons who had physical custody of the child?"

[7] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

"[t]rial counsel cannot be found ineffective if the law is unclear." Amanda now appeals.

## DISCUSSION

### I. Directed Verdict.

¶22 We first address Amanda's claim that the circuit court erred by denying her motion for a directed verdict as to the second alleged period of abandonment. Amanda contends that she had good cause for failing to communicate or visit with Lauren during the second abandonment period because the GAL and Lisa prevented her from doing so and that "there is no credible evidence that could support the jury rejecting [her] good cause defense" for that alleged period of abandonment.

¶23 A motion for a directed verdict is authorized under WIS. STAT. § 805.14(4), which provides that after "the close of all evidence" during a jury trial, "any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal or by moving the court to find as a matter of law upon any claim or defense or upon any element or ground thereof." Directed verdicts are permitted in civil proceedings, including TPR proceedings. ***Door Cnty. DHFS v. Scott S.***, 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999).

¶24 In reviewing a denied motion for directed verdict, we consider whether, taking into account "all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion was made, there is any credible evidence to sustain a finding in favor of that party." ***Warren v. American Fam. Mut. Ins. Co.***, 122 Wis. 2d 381, 384, 361 N.W.2d 724

(Ct. App. 1984); WIS. STAT. § 805.14(1). "If there is any credible evidence to sustain a cause of action, the case must be submitted to the jury. Except in the clearest of cases, a trial judge should withhold ruling on a directed verdict and permit the question to go to the jury." *Warren*, 122 Wis. 2d at 384.[8] Further,

> [t]he jury is to be the trier of the facts and, in any circumstances where the facts are disputed or where different inferences may be drawn from the facts, the jury is to be the factfinder. Accordingly, a [circuit] court may take a matter from the jury in only very limited circumstances.

*Millonig v. Bakken*, 112 Wis. 2d 445, 449, 334 N.W.2d 80 (1983).

¶25 The Smiths argued that Amanda abandoned Lauren as provided in WIS. STAT. § 48.415(1)(a)3., which requires proof, by clear and convincing evidence, that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." *Id.*; *see also* WIS. STAT. § 48.31(1).

¶26 The legislature has also included a defense to abandonment in WIS. STAT. § 48.415(1)(c), which provides:

---

[8] Amanda cites *Emer's Camper Corral, LLC v. Alderman*, 2020 WI 46, ¶15, 391 Wis. 2d 674, 943 N.W.2d 513, for the proposition that a circuit court's decision on a motion for directed verdict is upheld unless the court was "clearly wrong." We note that our supreme court in *Emer's* stated, "Where a circuit court *grants a motion for a directed verdict*, we will uphold the circuit court's decision unless the circuit court was clearly wrong." *Id.* (emphasis added). Because the circuit court did not grant Amanda's motion for a directed verdict, we apply the standard of review set forth in *Warren v. American Fam. Mut. Ins. Co.*, 122 Wis. 2d 381, 384, 361 N.W.2d 724 (Ct. App. 1984).

Abandonment is not established under par. (a)2.[9] or 3. if the parent proves all of the following by a preponderance of the evidence:

1. That the parent had good cause for having failed to visit with the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.

2. That the parent had good cause for having failed to communicate with the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.

3. If the parent proves good cause under subd. 2., including good cause based on evidence that the child's age or condition would have rendered any communication with the child meaningless, that one of the following occurred:

a. The parent communicated about the child with the person or persons who had physical custody of the child during the time period specified in par. (a)2. or 3., whichever is applicable, or, if par. (a)2. is applicable, with the agency responsible for the care of the child during the time period specified in par. (a)2.

b. The parent had good cause for having failed to communicate about the child with the person or persons who had physical custody of the child or the agency responsible for the care of the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.

¶27    In viewing the evidence in the light most favorable to the Smiths, we conclude that the circuit court did not err by denying Amanda's motion for a directed verdict as to the second abandonment period. Amanda contends that because Lisa and the GAL did not provide a "reasonable opportunity" for Amanda "to visit or communicate with Lauren," there was "no credible evidence that could support the jury rejecting Amanda's good cause defense" as to the second alleged period of abandonment. The record belies Amanda's argument.

---

[9] Abandonment under WIS. STAT. § 48.415(1)(a)2. is not at issue in this case.

¶28     Specifically, Amanda acknowledged that, during this time period, she had no contact with Lauren and sent only two emails to Lisa despite testifying that she knew Lisa's home address, had Lisa's phone number, and knew Lisa's email address.  Lisa testified that she has lived at the same address since 2007, that she has had the same phone number for over 30 years, and that she has had the same email addresses since 2014.  Lisa also testified that she had never blocked Amanda on her cell phone and that she believed she had responded to every email that Amanda sent her.  Further, Lisa denied interfering with Amanda's efforts to see Lauren and she stated that it was Amanda's responsibility to schedule visits with Lauren, which Amanda failed to do.

¶29     While there appears to be no evidence explaining why the GAL did not reply to Amanda's emails, in viewing the evidence in the light most favorable to the Smiths, there was evidence to support a jury finding that Amanda did not have good cause for failing to visit or contact Lauren during this time period.  A jury could reasonably conclude that Amanda was not credible, or at least she was less credible than the Smiths.  Making such a finding, the jury could further find that Amanda did not make a good faith effort to communicate with Lauren, the GAL, or Lisa; that Amanda failed to prove that the Smiths interfered with her ability to communicate and visit with Lauren; or that Amanda did not have good cause for failing to communicate and visit with Lauren.  Simply put, there were factual disputes regarding Amanda's good cause defense during the second alleged period of abandonment.  Accordingly, the circuit court did not err by denying Amanda's motion for a directed verdict.  *See **Millonig***, 112 Wis. 2d at 449.

## II. Ineffective Assistance of Counsel

¶30    Amanda argues that the jury instructions and special verdict form on the ground of abandonment violated her statutory and constitutional rights to a verdict by five-sixths of the jury because they failed to require the jury to separately determine whether she abandoned Lauren during each specific time period alleged.  As she did not raise this issue directly in the circuit court, it is therefore forfeited, *see* WIS. STAT. § 805.13(3).  She contends, however, her trial counsel rendered ineffective assistance by failing to object to the instructions and verdict form.

¶31    A parent in a TPR action has the right to be represented by effective counsel, and a parent may therefore assert an ineffective assistance of counsel claim in a TPR action.  *See A.S. v. State*, 168 Wis. 2d 995, 1003-05, 485 N.W.2d 52 (1992).  A claim for the ineffective assistance of counsel presents mixed questions of law and fact.  *State v. Edward Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).  The circuit court's findings of fact will not be overturned unless clearly erroneous.  *Id.*  "The ultimate determination of whether counsel's performance was deficient and prejudicial … are questions of law which this court reviews independently."  *Id.,* at 128.

¶32    To demonstrate that counsel was ineffective, a party asserting the ineffective claim must prove both that counsel's performance was deficient and that the deficient performance was prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If the party asserting the ineffective claim parent fails to satisfy either prong of this test, we need not consider the other.  *See State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.  "[A]n attorney is not deficient for failing to pursue an 'unsettled proposition of law.'"  *State v.*

14

*Robinson*, 2024 WI App 50, ¶32, 413 Wis. 2d 534, 12 N.W.3d 535 (citation omitted).

¶33 Amanda contends that the circuit court erred by concluding that the law on this issue is not settled and thereby denying her ineffective assistance claim. She asserts that her counsel performed deficiently both by failing to ask the circuit court to instruct the jury to answer separate questions related to each claimed abandonment period and by not objecting to the court's failure to provide the jury with separate verdict forms as to each claimed abandonment period. She asserts that the law on this issue is well settled because the comments to the jury instruction on abandonment under WIS. STAT. § 48.415(1)(a)(3) state that in cases where multiple periods of abandonment are alleged, counsel should "be alert to notice issues and separating the claims," WIS JI—CHILDREN 314 (2018) (Period of Abandonment; Different Intervals), and because the five-sixths jury verdict requirement "is well-established."

¶34 We conclude that the law is unsettled as to whether separate instructions and verdict forms are required when more than one period of abandonment is alleged in a TPR action. In *Heather T.C. v. Donald M.H.*, No. 2010AP467, unpublished slip op., ¶15 (WI App Feb. 1, 2012), this court specifically noted that "[w]hile in the future Wisconsin law may clarify whether separate instructions and separate verdicts are required when more than one period of abandonment is alleged, we have found no clear law that would have required this at the time of the jury instruction and verdict conference in this case."[10] Our

---

[10] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

search of the caselaw has not revealed any subsequent clarification on this issue. Further, Amanda ignores that the jury instruction comment she cites also states that "'no clear law' exists to clarify whether separate instructions and separate verdicts are required when more than one period of abandonment is alleged." WIS JI—CHILDREN 314 (2018).

¶35     While there is a statutory and constitutional right to a verdict by at least five-sixths of the jury, *see* WIS. STAT. § 805.09(2); WIS. CONST. art. I, § 5, the law is unclear as to whether failing to provide instructions and a verdict requiring that the jury differentiate between periods of abandonment violates that right.     We therefore conclude that Amanda's counsel did not render constitutionally ineffective assistance by failing to object to the circuit court's instructions and verdict form, and the court did not err by denying Amanda's postdisposition motion on this issue.

### III.  Plain Error

¶36     Alternatively, Amanda argues that the claimed errors in this case regarding the jury instruction and verdict form should be reviewed for plain error. The plain error doctrine is codified in WIS. STAT. § 901.03(4) and provides, "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."  "The plain error doctrine allows appellate courts to review errors that were otherwise [forfeited] by a party's failure to object."  *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77.

> Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time."  The error, however, must be "obvious and substantial."  Courts should use the plain error doctrine sparingly.  For example, "where a basic

16

> constitutional right has not been extended to the accused," the plain error doctrine should be utilized.

*Id.* (citations omitted). "[T]he existence of plain error will turn on the facts of the particular case." *Id.*, ¶22 (citation omitted). If the proponent of the plain error shows that the unobjected-to error is fundamental, obvious, and substantial, the burden shifts to the beneficiary of the error to show that the error was harmless. *See id.*, ¶23.

¶37 The resolution of Amanda's claims requires us to interpret statutes and to determine whether jury instructions state the applicable law correctly, both of which are questions of law that we review de novo. *State v. Stewart*, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188; *State v. Langlois*, 2018 WI 73, ¶34, 382 Wis. 2d 414, 913 N.W.2d 812. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

¶38    "'Termination of parental rights' means that, pursuant to a court order, all rights, powers, privileges, immunities, duties and obligations existing between parent and child are permanently severed." WIS. STAT. § 48.40(2).  TPR proceedings "are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" *Steven V. v. Kelley H.*, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (citation omitted).  Because of this, TPR proceedings "deserve 'heightened' due process protections." *Dane Cnty. DHS v. Susan P. S.*, 2006 WI App 100, ¶51 n.5, 293 Wis. 2d 279, 715 N.W.2d 692 (citation omitted); *Brown County v. Shannon R.*, 2005 WI 160, ¶59, 286 Wis. 2d 278, 706 N.W.2d 269.

¶39    "A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment." *Steven V.*, 271 Wis. 2d 1, ¶22. "Thus, due process requires that '[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.'" *Id.*, ¶23 (citation omitted).  These "fundamentally fair procedures" include the requirement of proving parental unfitness by clear and convincing evidence. *Id.*

¶40    A circuit court is required to find a parent unfit if a statutory ground for TPR is found by the court or by a jury. WIS. STAT. § 48.424(4).  The grounds for TPR are set forth in WIS. STAT. § 48.415, and the Smiths argued that Amanda abandoned Lauren under § 48.415(1)(a)3.  As relevant to the issues here, that statute required the Smiths to prove, by clear and convincing evidence, that Amanda failed to visit or communicate with Lauren for a period of six months or longer. *See id.*  Further, as relevant here and discussed above, § 48.415(1)(c) provides that abandonment is not established if the parent proves he or she has

good cause, as defined in the statute, for failing to visit or communicate with the child or the child's physical custodian during the alleged abandonment period. *See supra* ¶26.

¶41 A parent in a TPR proceeding has the right to a twelve-person jury during the grounds phase of the TPR process. WIS. STAT. § 48.31(1), (2). Section 48.31(2) further provides that WIS. STAT. chs. 756 and 805 "shall govern the selection of jurors." WISCONSIN STAT. § 805.09(2) in turn provides, "A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same claim, the same five-sixths of the jurors must agree on all the questions." This rule, colloquially referred to as the "five-sixths rule," "requires that the same ten jurors must agree on all questions *necessary to support a judgment on a particular claim.*" *Nommensen v. American Cont'l Ins. Co.*, 2000 WI App 230, ¶18, 239 Wis. 2d 129, 619 N.W.2d 137. Although the right to a jury trial at the grounds phase of a TPR proceeding "is entirely statutory" and "not mandated by constitutional due process," *Steven V.*, 271 Wis. 2d 1, ¶34, the right to a verdict by at least five-sixths of the jury stems from our state constitution. *See* WIS. CONST. art. I, § 5 ("[T]he legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.").

¶42 Amanda argues that the circuit court deprived her of her statutory and constitutional rights to a five-sixths jury verdict by failing to require that the jury agree on all questions necessary to support its verdict that she abandoned Lauren. Specifically, Amanda contends that by not instructing the jury to consider each alleged period of abandonment independently and failing to provide separate verdict forms for each abandonment period, she was deprived of her right to have

the same ten jurors agree on all questions necessary to support a judgment on each claimed abandonment period. We agree, and given Amanda's fundamental, obvious, and substantial rights at issue in this TPR proceeding, coupled with her statutory right to a five-sixths verdict, we conclude that the court's failure to provide the jury with separate instructions and verdicts for each alleged period of abandonment constituted plain error.[11]

¶43 We begin with our review of the plain language of the statute. Based on that review, we interpret WIS. STAT. § 48.415(1)(a)3. and the WIS JI—CHILDREN 314 (2018) model verdict questions[12] to refer to a single period of abandonment. Particularly, both § 48.415(1)(a)3. and question 3 of the model verdict questions ask if a parent failed to meet or communicate with his or her child "for *a period* of 6 months or longer"—meaning one singular period. Sec. 48.415(1)(a)3.; WIS JI—CHILDREN 314 (2018) (emphasis added). The next four model verdict questions—questions 4 though 7—pertain to a parent's defense to abandonment under WIS. STAT. § 48.415(1)(c), and both the instructions and the

---

[11] Because we conclude that failing to provide the jury with separate instructions and verdicts for each alleged period of abandonment was plain error, we need not address Amanda's argument that that she is entitled to reversal in the interest of justice. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (noting that we need not address all issues when the resolution of one of those issues is dispositive).

[12] The model verdict form for abandonment under WIS. STAT. § 48.415(1)(a)3. currently consists of seven questions.

questions refer back to that singular period from question 3. WIS JI—CHILDREN 314 (2018).[13]

¶44 Here, the circuit court's failure to instruct the jury to consider a singular period for each set of verdict questions and its failure to provide the jury with separate verdict forms for each alleged period of abandonment resulted in the jury failing to consider each alleged abandonment period separately and deprived Amanda of her right to a five-sixths verdict on each separate time period. Based upon the jury instructions and verdict form, we cannot determine if the same five-sixths of the jurors found that Amanda abandoned Lauren during one of the alleged periods, both of the alleged periods, or some combination of the two.

¶45 In fact, the circuit court recognized this possibility. In finding that the instructions and verdict form were sufficient, the court concluded that even if only five jurors agreed on the first time period, and only five jurors agreed on the second time period, "this means 10 jurors (five-sixths) found the mother abandoned her child." The court stated, "In a TPR trial, the ultimate question the jury must answer is: did the parent abandon her child, not when did the parent abandon her child." The Smiths echo this analysis, claiming the same five-sixths of the jury needed only to determine that Amanda "abandoned" Lauren and do not need to agree as to when that occurred.

---

[13] The jury instructions state that "[q]uestions 4-7 apply to the period of six months or longer as determined in question 3." These questions ask (4) "Did (parent) have good cause for having failed to visit with (child) during that period?," (5) "Did (parent) have good cause for having failed to communicate with (child) during that period?," (6) "Did (parent) communicate about (child) with the (person) (persons) who had physical custody of the child during that period?," and (7) "Did (parent) have good cause for having failed to communicate about (child) with the (person) (persons) having physical custody during that period?" WIS JI—CHILDREN 314 (2018).

¶46    We conclude this analysis ignores the plain wording of the statute. As Amanda argues, "the question of 'when' [she] allegedly failed to visit and communicate with Lauren is inherent to the question of 'whether' she abandoned Lauren, because the definition of abandonment contains a 'when' question—a specific 'period of 6 months or longer.'" *See* WIS. STAT. § 48.415(1)(a)3. This statutory manner of defining the grounds of "abandonment" is critical. The prejudicial effect of the generalized verdict is further amplified where, as was the case here, two jurors dissented from the majority's verdict. If even one of the remaining ten jurors based his or her decision on a different period than the rest to the jurors, the verdict did not meet the five-sixths requirement.

¶47    We further note that following the circuit court's rationale, a jury could find abandonment by determining that Amanda failed to visit or communicate with Lauren during six individual nonconsecutive months over a period of years. This result would clearly be contrary to the statute's wording requiring the jury to determine whether the parent has failed to visit or communicate with the child "for *a period* of 6 months or longer." *See id.* We conclude that this wording evidences the legislature's clear intent that a single, prolonged *period* of abandonment is required before a parent's fundamental rights are severed.

¶48    Although the jury did not address questions five through seven of the verdict, had they done so using a single verdict, we would be unable to determine whether five-sixths of the jury agreed that Amanda had good cause, or lacked good cause, in failing to visit or communicate with Lauren during the *same* time period. This inability is particularly problematic where, as here, a parent argues differing good cause defenses to the alleged periods of abandonment. Thus, where there are multiple alleged periods of abandonment, the jury must be instructed to

consider each alleged period of abandonment separately and must be provided with verdict forms as to each separate abandonment period alleged.

¶49 In arguing to the contrary, the Smiths cite *State v. William. Johnson*, 2001 WI 52, 243 Wis. 2d 365, 627 N.W.2d 455, a criminal case the circuit court relied upon and that the Smiths characterize as being applicable to TPR cases. There, the defendant was charged with repeated sexual assault of the same child based on the victim's testimony that the defendant assaulted her multiple times during the summer of 1997. *Id.*, ¶4. Among other elements, the jury was instructed that the State was required to prove that "at least three of the alleged sexual assaults took place from a specific period of time," with that period being the summer of 1997. *Id.*, ¶7. However, the applicable statute expressly stated that the jury must unanimously agree that at least three sexual assaults occurred, but it need not agree on which acts constituted the requisite number. *Id.*, ¶8. The defendant was convicted and subsequently moved for a new trial, arguing that his right to a unanimous verdict had been violated because "the State introduced evidence of more than the minimum number of sexual assaults required to constitute the crime, but the jury was not instructed that it had to agree unanimously on the specific acts of sexual assault before convicting him." *Id.*, ¶9.

¶50 Our supreme court rejected the defendant's argument. *Id.*, ¶28. The court noted that "when the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of commission." *Id.*, ¶11. Applying this test, the court concluded, "Where evidence of more than three acts is admitted, the jury need not unanimously agree about the underlying acts as long as it unanimously agrees that the defendant committed at least three." *Id.*, ¶15. "In other words, it is the *course* of sexually assaultive conduct that constitutes the primary element of

this offense, about which the jury must be unanimous…. Unanimity is explicitly *not* required regarding the individual acts of sexual assault." *Id.*, ¶16

¶51 The court further stated:

> [T]he violations of the law about which the jury need not be unanimous under this statutory scheme all involve the sexual abuse of children, crimes of the same or similar nature and level of culpability. It is therefore not unfair or irrational to lift the requirement of jury unanimity as to the specific underlying acts as long as unanimity is required regarding the existence of the course of conduct.

*Id.*, ¶19.

¶52 Applying the same logic from the **William. Johnson** court, the circuit court found—and the Smiths argue on appeal—that "[t]he five-sixths threshold is met upon the jury returning a finding of abandonment—that is all the law requires the jury to decide. The law does not require deciding alleged multiple periods of abandonment separately, nor does it require multiple periods to be presented to the jury separately."

¶53 We consider this analogy inapt.[14] Here, unlike WIS. STAT. § 948.025(2), the course of conduct necessary to support a judgment on a claim for abandonment—i.e., one of the essential elements—*is a period of abandonment* of six or more months. The legislature has recognized the fundamental rights

---

[14] The circuit court also considered whether separate jury instructions and verdict forms were needed by comparing this issue to the context of party-to-a-crime liability, in that there are "various ways a person might be guilty as a party to a crime without requiring the jurors to agree on the applicable theory or theories." *See Holland v. State*, 91 Wis. 2d 134, 143, 280 N.W.2d 288 (1979). We do not find this reasoning persuasive, as there is no allegation here that the time element of abandonment can be proven in a variety of ways; it can only be proven if a child is abandoned for a period of six months or more.

affected by TPR proceedings, and, in order to terminate those rights, it requires proof that a parent abandoned his or her child under WIS. STAT. § 48.415(1)(a)3. *for a period of at least six months*. Further, the legislature has provided a parent with the opportunity to present a defense of good cause, the facts of which are specifically related to each period of abandonment alleged. In other words, based upon our interpretation of WIS. STAT. § 48.415(1)(a)3, we conclude that in order to permanently destroy all legal recognition of the parental relationship, five-sixths of the jury must agree on one period of abandonment, and the same five-sixths of the jury must agree that the parent did not have good cause for failing to visit or communicate with the child or his or her custodian during that abandonment period.

¶54 The Smiths also contrast abandonment under WIS. STAT. § 48.415(1)(a)3. with the finding of dangerousness required to have a person involuntarily committed under WIS. STAT. § 51.20. The Smiths note that circuit courts must make specific factual findings regarding a subject's dangerousness in order to clearly track the necessary elements for involuntary commitment. *See Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277; *Sheboygan County v. M.W.*, 2022 WI 40, ¶11, 402 Wis. 2d 1, 974 N.W.2d 733 (quoting the court of appeals decision that the circuit court "failed to clearly track the necessary elements of any particular subdivision paragraph and state how the evidence satisfied those elements."). The Smiths assert that there is no subcategorization of types of abandonment in § 48.415(1)(a)3. as there is for the types of dangerousness in § 51.20; instead, § 48.415(1)(a)3. has "a singular evidentiary threshold." From these differences, they contend that the jury need not differentiate between periods of abandonment in reaching its decision.

¶55 We are not persuaded. Abandonment under WIS. STAT. § 48.415(1)(a)3. does not have a singular evidentiary threshold as the Smiths suggest. Rather, there is a secondary evidentiary threshold concerning the parent's right to present a good cause defense to abandonment under § 48.415(1)(c), and that statute provides multiple ways in which a parent can prove a good cause defense. This defense not only directly corresponds to the specific alleged period of abandonment, but it also has a different evidentiary burden. *See* WIS. STAT. § 48.31(1) (stating that the grounds under § 48.415 must be proved by clear and convincing evidence); § 48.415(1)(c) (stating that a parent must prove his or her defense to abandonment by a preponderance of the evidence).

¶56 Regardless, as stated above, in order to find abandonment when multiple time periods are alleged, we interpret WIS. STAT. § 48.415(1)(a)3 as requiring that five-sixths of the jury agree both on *a period* of abandonment and that the parent did not have good cause for failing to visit or communicate with the child or his or her custodian during that specific abandonment period in order for there to be grounds for TPR. The circuit court's failure to provide the jury with instructions and verdict forms that complied with these statutory requirements, thereby depriving Amanda of her right to a five-sixths verdict, constituted plain error.

## IV. Harmless Error.

¶57 Having concluded that the failure to provide the jury with separate instructions and special verdict forms for each alleged period of abandonment was a fundamental, obvious, and substantial error, the burden now shifts to the Smiths to show that the error was harmless. *See **Jorgensen***, 310 Wis. 2d 138, ¶23; ***State v. Dyess***, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). "The standard for

harmless error is the same for civil and criminal cases. The test is whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Schwigel v. Kohlmann*, 2005 WI App 44, ¶11, 280 Wis. 2d 193, 694 N.W.2d 467.

¶58 The Smiths do little in trying to meet their burden. They "contend that any such error is appropriately deemed harmless." They further assert that "[t]he record does not support, and Amanda fails to present, any evidence demonstrating the jury's verdict was unreliable, or that any juror could have reached a different conclusion had the alleged error not occurred."

¶59 In making this argument, the Smiths ignore that they have the burden to prove harmless error. In addition, they fail to address the clear violation of Amanda's right to a five-sixths jury verdict. As discussed above, the circuit court's failure to properly instruct the jury and provide separate verdicts for each alleged abandonment period prevents us from determining if the same five-sixths of the jurors found that Amanda abandoned Lauren during one six-month time period. There is a reasonable possibility that these errors contributed to the jury's finding of abandonment. Further, it is possible that the jury may have found Amanda had good cause for failing to communicate with or visit Lauren if the jury had been asked to consider each period of abandonment separately. We therefore conclude that the circuit court's failure to properly instruct the jury and provide separate verdicts for each alleged period of abandonment was not harmless.

## CONCLUSION

¶60 A parent's failure to visit or communicate with his or her child for a period of six months or longer is an essential element of abandonment under WIS. STAT. § 48.415(1)(a)3. When multiple periods of abandonment are alleged, that

statute requires the jury must be instructed to consider each period of abandonment separately, and the jury must be provided with a separate verdict form for each period of abandonment. As this area of the law was previously unsettled, Amanda's counsel did not perform deficiently by failing to question the jury instructions and verdict form. We now conclude, however, that the circuit court's failure to properly instruct the jury and provide separate verdict forms for each abandonment period alleged deprived Amanda of her right to a five-sixths verdict, constituting plain error. We further conclude that such error was not harmless. We therefore reverse the court's order terminating Amanda's parental rights to Lauren and the order denying Amanda's postdisposition motion, and we remand with directions for a new factfinding hearing consistent with this decision.

*By the Court.*—Orders reversed and cause remanded with directions.

Recommended for publication in the official reports.